David A. NEEL, Plaintiff and Appellant,

v.

Tamara HOLDEN, Warden, Utah State Prison, and the Department of Corrections by and through the Board of Pardons, Defendants and Appellees.

No. 930447.

Supreme Court of Utah.

Dec. 7, 1994.

Gregory J. Sanders, Salt Lake City, for plaintiff.

Jan Graham, Atty. Gen., James H. Beadles, Asst. Atty. Gen., Salt Lake City, for defendants.

ZIMMERMAN, Chief Justice:

In this habeas corpus proceeding, plaintiff David Neel, an inmate at the Utah State Prison, contends that the Utah Board of Pardons (the "Board") denied him due process of law and the effective assistance of counsel by (i) denying him access to confidential psychological reports that the Board used in deciding not to grant him parole, and (ii) refusing to permit his counsel to address the Board directly during his parole grant hearing. The district court denied Neel's petition. We reverse and remand with instructions that another parole grant hearing be held in accordance with the requirements of this opinion.

In 1983, Neel was convicted of sexually abusing a child, a first degree felony which carried with it an indeterminate sentence of five years to life. The Board denied Neel parole at his original parole grant hearing on November 14, 1984, and at subsequent hearings in 1986 and 1989. At the 1989 hearing, the Board set a parole date for the following year.

In February of 1990, Neel was paroled to the Bonneville Community Correctional Center. Within a few weeks, however, he left the Center in violation of his parole agreement. He was arrested seven days later in Pennsylvania. At a parole revocation hearing held July 18, 1990, Neel pleaded guilty to a charge of parole violation. At that time, the Board revoked his parole and scheduled a parole grant hearing for February of 1991. Due to a delay in preparing his psychological report, however, the hearing did not take place until July 26, 1991. At that hearing, the Board denied Neel parole and scheduled another hearing for August of 1992.[1] Neel's petition challenges certain procedures followed by the Board in determining whether to grant parole at the 1991 hearing.

In making its determination not to grant parole, the Board adhered to its rules then in effect. *See* Utah Admin.Code R655–303, –308 (1991). Prior to the hearing, the Board granted Neel access to certain documents contained in his file. However, relying on rule 655–303 of the Administrative Code, the Board denied him access to those portions of his file classified as "confidential," which included a psychological report that the Board used in determining whether to grant parole.[2]

---

**1.** The Board again denied parole at Neel's 1992 hearing. His next parole grant hearing is scheduled for August of 1995.

**2.** We note that recent changes in the Board's rules have eliminated the restriction on access to the "confidential" information on which the Board relied in 1991. At that time, the rule read:

> An offender shall have access to all information relating to his case on which parole decisions are made except that which is classified confidential.

Utah Admin.Code R655–303–1 *(1991).*

> All material submitted to the Board, except that which is specifically classified as confiden-

tial, shall be available to be reviewed with the offender.

> The Board may review the offender's record and cover areas of concern during the hearing. The offender may comment, clarify issues and ask questions at the hearing.

> Upon written request from the offender, copies of requested information not classified as confidential shall be provided at the offender's expense.

Utah Admin.Code R655–303–2 (1991).

The rule is now contained in rule 671–303–1 and has been rewritten to read:

> For any hearing at which an offender is entitled to a personal appearance, the offender shall be provided a general summary either orally or in writing of any information on

Neel's attorney was present at the hearing, and the Board allowed Neel to consult with his attorney both before and during the hearing. The Board did not, however, allow Neel's attorney to sit with Neel or to address the Board during the hearing.

■ Neel filed a habeas corpus petition in Third District Court in which he argued that certain procedures followed by the Board in determining whether to grant him parole violated his right to due process, as well as other rights guaranteed by the state and federal constitutions. Upon the State's motion, the district court dismissed Neel's petition. On appeal, the court of appeals remanded the case to the district court for further development of the record and entry of findings in support of its decision. *Neel v. Holden*, 849 P.2d 601, 602 (Utah Ct.App. 1993). Following remand and further proceedings, the district court again dismissed Neel's petition. Neel appealed to this court.[3]

■ We first state the appropriate standard of review. When reviewing an appeal from a dismissal of a petition for a writ of habeas corpus, we accord no deference to the conclusions of law that underlie the dismissal. They are reviewed for correctness. *Fernandez v. Cook*, 783 P.2d 547, 549 (Utah 1989). However, while "we must review the fairness of the *process* by which the Board undertakes its sentencing function, ... we do not sit as a panel of review on the result." *Lancaster v. Utah Bd. of Pardons*, 869 P.2d 945,

947 (Utah 1994) (citing *Labrum v. Utah State Bd. of Pardons*, 870 P.2d 902, 910 (Utah 1993)).

■ The first issue is whether Neel's post-revocation parole grant hearing was subject to the due process requirements of the Utah Constitution. Article I, section 7 of the Utah Constitution guarantees that "[n]o person shall be deprived of ... liberty ... without due process of law." Utah Const. art. I, § 7. In several recent cases, this court has relied on that clause to require certain procedural due process guarantees at some parole grant hearings. *See, e.g., Labrum*, 870 P.2d at 909; *Foote v. Utah Bd. of Pardons*, 808 P.2d 734, 735 (Utah 1991). In *Labrum*, for example, we held, "For purposes of original parole grant hearings at which predicted terms of incarceration are determined, fundamental principles of due process under article I, section 7 of the Utah Constitution apply." 870 P.2d at 911.

■ To determine whether due process requirements applied to Neel's 1991 parole grant hearing, it is necessary first to examine the nature and development of Utah's indeterminate sentencing system. As we explained in *Labrum*, Utah's system of parole was established in 1899 in the context of the determinate sentencing scheme in effect at that time. *Id.* at 906. Under such a system, an offender's liberty interest is extinguished as soon as a trial court sentences that indi-

---

which the Board intends to rely in making its decision.

The offender shall have the opportunity to respond to the summary.

At the time the offender appears before the Board, the Board shall summarize the information considered in reaching its decision. The offender will be given a reasonable opportunity to respond to any information the Board is considering. If the offender asserts that information considered by the Board is not correct, he may present documentation, affidavits or other information to disprove the fact in dispute.

The Board may continue the hearing to allow for submission of such information. The Board shall consider any information obtained at the hearing or supplied by the offender.

If the offender alleges a factual inaccuracy in any of the summarized information, the Board shall, as to each matter controverted that would materially affect the Board's decision:

(1) make a finding as to the allegation or (2) make a determination that no such finding is necessary because the matter controverted will not be taken into account in the Board's decision.

Upon request and in accordance with Chapter 1, Title 63, Government Records Access and Management Act, the Board shall provide an offender with a copy of public or private records in its files that it uses in making a decision in the offender's case.
Utah Admin.Code R671–303–1 (1993).

**3.** This court has jurisdiction over appeals from orders on petitions for extraordinary writ which challenge the conviction of or sentence for a first degree felony or a capital felony. Utah Code Ann. §§ 78–2–2(3)(j), –2a–3(2)(h); *Preece v. House*, 886 P.2d 508, 511 (Utah 1994). Because Neel challenges a sentencing decision in a case involving a first degree felony, we have jurisdiction over this appeal.

vidual to a determinate term. Because no liberty interest is implicated in making parole decisions in determinate sentencing systems, due process concerns do not arise. Accordingly, courts have traditionally been extremely deferential to parole board decision making in determinate sentencing systems. *Id.* at 905.

 Since 1913, however, Utah has employed an indeterminate sentencing system under which trial courts do not sentence offenders to a determinate term but impose a statutorily prescribed range of years. Act of March 24, 1913, ch. 100, 1913 Utah Laws 192; *Labrum,* 870 P.2d at 907 (citing *State v. Egbert,* 748 P.2d 558, 563 (Utah 1987) (Zimmerman, J., dissenting)). Under Utah's current system, "the Board [of Pardons] determines the actual number of years a defendant is to serve." *Labrum,* 870 P.2d at 907 (citing *Foote,* 808 P.2d at 735). For all intents and purposes, adoption of this indeterminate sentencing system transformed the Board from an agency having the ability to shorten a prisoner's judge-determined sentence into an agency with power analogous to that of a court to actually impose a sentence. Therefore, the Board's decision of whether to grant parole does implicate the offender's liberty interest because at the time an offender first comes before the Board, no term of incarceration has been fixed. Consequently, at least under some circumstances, the Board's decision-making process must be restricted by the procedural safeguards of due process. *See, e.g., Labrum,* 870 P.2d at 909; *Foote,* 808 P.2d at 735.

On the basis of the above analysis, this court held in *Labrum* that due process guarantees apply in "original parole grant hearings at which predicted terms of incarceration are determined." 870 P.2d at 911. The "original" parole grant hearing at issue in *Labrum* was the first hearing at which the Board could establish a tentative release date. Utah Code Ann. § 77–27–7(1); Utah Admin.Code R671–201–1. In the present case, Neel argues that his post-revocation parole grant hearing is analogous to the original parole grant hearing in *Labrum* and, therefore, that he was equally entitled to due process protection. We agree and conclude

that the general principles articulated in *Labrum* are applicable here as well.

 Our decision today, however, does not cover every type of parole hearing. In *Labrum,* we applied due process guarantees to "original parole grant hearings at which predicted terms of incarceration are determined," 870 P.2d at 911, not merely because of the temporal proximity of these original hearings to the sentencing phase of the trial but, more important, because "[t]he function and purpose of the original parole grant hearing is to make the first determination of the actual term the inmate is to serve in prison." *Id.* at 908. Until that initial term is set, any proceeding at which the issue is considered must be perceived as a threat to the prisoner's liberty. Once that initial term is set, however, the prisoner's liberty interest is diminished to an expectation of being released upon completion of the term fixed. Therefore, we extend today's decision only to those parole hearings at which an inmate's release date is fixed or extended.

After a prisoner's liberty interest has been diminished to an expectation of release on a certain date, that interest revives either upon completion of the term fixed or upon a grant of parole before that fixed date. Once paroled, offenders have a liberty interest that is limited by the restrictions that govern parole; it is nevertheless a liberty interest which is entitled to due process protection. *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 481–82, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). If an offender's parole is revoked, the offender's liberty interest persists until the Board establishes a new release date at a hearing that follows the parole revocation hearing.

The situation of an offender whose parole has been revoked but for whom the Board has not yet established a new release date can be analogized to that of a defendant who has been found guilty but not yet sentenced. Just as the finding of guilt does not render due process guarantees inapplicable to presentencing or sentencing proceedings, the revocation of parole does not remove due process considerations from subsequent pro-

ceedings held prior to the establishment of a new release date.

Moving to the present case, Neel's 1991 hearing was his first appearance before the Board after his reincarceration for breach of parole. The liberty interest that arose upon his parole persisted through this hearing because the Board had not yet established a new release date. We therefore hold that Neel was entitled to due process procedures at his 1991 parole grant hearing under article I, section 7 of the Utah Constitution.

We next address whether the procedures at Neel's 1991 hearing violated his right to due process. Neel argues that the Board denied him due process of law by (i) denying him access to the psychological reports that the Board used in reaching its decision not to grant him parole, and (ii) refusing to permit his attorney to address the Board directly during his hearing. In order to resolve these issues, we must first address the meaning of "due process" in the context of sentencing, i.e., setting a release date.

■ Due process is a flexible concept, which " 'calls for the procedural protection that the given situation demands.'" *Labrum*, 870 P.2d at 911 (quoting *In re Whitesel*, 111 Wash.2d 621, 763 P.2d 199, 203 (1988)). "Precisely what due process requires of the board of pardons cannot be determined in the abstract, but must be determined only after the facts concerning the procedures followed by the board have been [fleshed] out." *Foote*, 808 P.2d at 735. Consequently, what due process requires in an initial post-revocation parole grant hearing may be substantially different from what is required in other parole contexts, such as a parole revocation hearing.

In the context of sentencing, "[d]ue process does not impose the full range of trial procedures designed to sift truth from error." *State v. Johnson*, 856 P.2d 1064, 1071 (Utah 1993) (citing *State v. Howell*, 707 P.2d 115, 117 (Utah 1985)). However, "[t]he need for evidentiary reliability in sentencing pro-

ceedings is greater when specific factual issues must be resolved." *Id.* This consideration applies with full force to Neel's 1991 parole grant hearing. The fact that Neel's hearing followed the revocation of his parole does not lessen the importance of the Board's relying on true and accurate factual information whenever it establishes a prisoner's release date. Therefore, our concern that release dates might be established on the basis of false or misleading information is our primary guide in evaluating Neel's complaint. *See Labrum*, 870 P.2d at 909–10.

■ Against this background, we address Neel's due process contentions. First, was Neel entitled to access psychological reports that the Board used in deciding not to grant him parole? [4] *Labrum* involved a prisoner's request for access to information contained in his parole file. There, we held that the Board cannot deny an inmate access to information that the Board will consider in establishing a release date at the inmate's original parole grant hearing, absent legitimate security concerns such as threats to the safety of informants or other third persons. *Id.* Our decision to require disclosure in the *Labrum* context was grounded largely on concerns about the factual accuracy of the information contained in the Board's files. *Id.*

This same concern pervades our cases which deal with disclosure to defendants of information used in sentencing. *See, e.g., Howell,* 707 P.2d at 117–18; *State v. Lipsky,* 608 P.2d 1241, 1248–49 (Utah 1980). In *State v. Casarez,* 656 P.2d 1005, 1008 (Utah 1982), we said:

[T]here is no substantial reason for sentencing criminal defendants on the basis of confidential information ... without affording those defendants some opportunity to point out mistakes in that information. It is essential to both the form and substance of a fair proceeding that the defendant have the right to point out errors, misinterpretations, or even to demonstrate

---

4. The Utah Legislature has never addressed the issue of prisoner access to psychological reports before parole grant hearings. However, we note that the Code does require in felony cases that the defendant or the defendant's attorney be pro-vided, prior to sentencing, with a written presentence report prepared pursuant to section 76–3–404(1)(a)(ii). Utah Code Ann. § 76–3–404(1)(b)(i).

that he is not in fact the subject of the report. Such errors are not unknown.

 This rationale guides our decision in the present case. We hold that an inmate is entitled to access psychological reports to be considered by the Board in hearings at which the inmate's release date may be fixed or extended.[5]

We note, however, that an inmate's right of access to psychological reports is not unlimited. Just as the requirements of due process are limited in sentencing proceedings, so they are in parole hearings at which an inmate's predicted term of incarceration may be set.[6] Specifically, due process does not require the *disclosure of confidential information when that disclosure might lead to harm of a third person. Id.* The state has an interest in "protect[ing] potentially vulnerable informants," and it may do so by "withhold[ing] the identity of sources and prepar[ing] summaries of the information for the inmate's use rather than providing copies of the actual documents" when such measures are absolutely required. *Labrum,* 870 P.2d at 910.

 We next address Neel's second contention: that the Board should have permitted Neel's counsel to address the Board at his 1991 hearing. Once again, our decision to extend due process rights based on article I, section 7 of the Utah Constitution is grounded in our concern that the Board might rely on inaccurate factual information in denying a parole bid. To reiterate, the touchstone of due process in the context of parole hearings is whether the proposed procedural due process requirement substantially furthers the accuracy and reliability of the Board's fact-finding process. In light of this rationale and because Neel has failed to show how the further participation of counsel at the hearing would have affected the accuracy of the information considered by the Board, we do not find that Neel was denied due process by the Board's refusal to allow Neel's counsel to address the Board.[7]

 Neel argues alternatively that the Board denied him the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and by article I, section 12 of the Utah Constitution by refusing to permit his attorney to participate in the 1991 hearing. However, both of these constitutional provisions are limited in their application to "criminal prosecutions." U.S. Const. amend. VI; Utah Const. art. I, § 12. The Supreme Court has expressly found that "the revocation of parole is not a part of the criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not ap-

5. Neel also argues that his right of access to psychological reports that the Board considered in denying his parole bid is assured by the "right to defend liberty" as guaranteed under article I, section 1 of the Utah Constitution and by his "right to confront the witnesses and to be informed of the accusations against him" as guaranteed under the Sixth Amendment to the United States Constitution and article I, section 12 of the Utah Constitution. Because we decide this case on the basis of due process rights guaranteed by article I, section 7 of the Utah Constitution as applied in *Labrum,* we do not reach these additional constitutional questions.

6. *See, e.g., State v. Lipsky,* 608 P.2d 1241, 1244 (Utah 1980) (holding that while defendant should be given opportunity to bring inaccuracies contained in presentence report to court's attention, this may be done without author of report personally appearing and testifying in open court); *see also State v. Sanwick,* 713 P.2d 707, 709 (Utah 1986) (denying defendant's motion to remand for cross-examination of victims whose statements appeared in presentence report); *State v. Rhodes,* 818 P.2d 1048, 1050–51 (Utah Ct.App.1991) (denying defendant's motion for continuance of sentencing to obtain more favorable evidence by cross-examination and holding that due process rights in sentencing are satisfied by affording defendants opportunity to examine and contest accuracy of factual statements contained in reports before sentencing court).

7. We do note that the argument has been made that attorney representation in parole grant hearings would only inhibit the Board's efforts to evaluate prisoners' rehabilitative progress, and would, in the interests of fairness, necessitate attorney representation of the State's interests as well, ultimately resulting in parole hearings encumbered by costly and time-consuming trial procedures. *See Gagnon v. Scarpelli,* 411 U.S. 778, 787–88, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973). We have no desire to turn these hearings into adversarial or confrontational exercises when there is not a clear showing of a need to do so. Therefore, we view somewhat skeptically the suggestion that attorneys should be permitted to address the Board on their client's behalf in parole hearings.

ply to parole revocations." *Morrissey,* 408 U.S. at 480, 92 S.Ct. at 2599 (citation omitted). The Supreme Court has also held that there is no constitutional right to counsel in such a proceeding. *Gagnon,* 411 U.S. at 787–90, 93 S.Ct. at 1762–63. If the Sixth Amendment does not guarantee the right to counsel in a parole revocation hearing, it certainly does not guarantee that right in an offender's initial post-revocation parole grant hearing.

■■■■ In Utah, offenders do have a right to be represented by counsel in parole revocation hearings, but this right is conferred by section 77–27–11(5) of the Code. We have never held that article 12 of the Declaration of Rights in the Utah Constitution guarantees such representation. The procedural rights guaranteed by section 77–27–11(5) apply only to parole revocation hearings. No mention is made of subsequent parole grant hearings. Therefore, any right to counsel in such hearings must proceed out of the due process rights afforded by article I, section 7 of the Utah Constitution. As noted above, Neel has not shown that he has been denied such a right.

■■■ Finally, we address the retroactivity of today's decision. In *Andrews v. Morris,* 677 P.2d 81, 91 (1983), we set out a three-pronged test for determining the application of a new rule of criminal procedure established by this court:

> [W]e hereby explicitly adopt the following analytic standards for determining the retroactivity of new rules in criminal cases on collateral rather than direct review: 1) the purpose to be served by the new rule, 2) the extent of reliance on the old rule, and 3) the effect on the administration of justice of a retroactive application of the new rule.

(Citations omitted.) Because the issues involved in this case are substantially similar to those in *Labrum,* we refer to *Labrum*'s application of the *Andrews* test.

■■■ In *Labrum,* we found it useful to break our inquiry into the purpose of the new rule (the first prong of the *Andrews* test) into three questions: (i) Is the new rule essentially prophylactic? (ii) would the retro-active application of the new rule result in windfall benefits to offenders who suffered no constitutional deprivation? and (iii) does the new rule protect or enhance a preexisting constitutional right rather than conferring a new one? 870 P.2d at 912–13 (citing *Michigan v. Payne,* 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973)). If these three questions are answered in the affirmative, then the purpose of the new rule does not favor retroactive application.

■■■ In *Labrum,* we said that the purpose for extending due process rights to original parole grant hearings is essentially prophylactic, i.e., it was meant to prevent error and to "ensure the accuracy and fairness of Board decisions." *Id.* at 912. Similarly, the procedural requirements we announce today are meant to prevent error and are therefore prophylactic.

Second, if applied retroactively, today's rule would " 'occasion windfall benefits for some defendants who have suffered no constitutional deprivation.' " *Id.* (quoting *Payne,* 412 U.S. at 53, 93 S.Ct. at 1969). While recognizing the possibility that the Board may sometimes make decisions on the basis of mistaken information, we have no doubt that such mistakes are infrequent and occur only in a small minority of the hearings at which the Board sets an inmate's predicted term of incarceration. Applying today's rule retroactively would require overturning a vast number of parole decisions made fairly and on the basis of accurate information.

Third, today's rule does not confer " 'a constitutional right that had not existed prior to [the] decision[ ].' " *Id.* 870 P.2d at 913 (quoting *Payne,* 412 U.S. at 54, 93 S.Ct. at 1970). The right to due process was preexisting. Today's decision merely " 'create[s] a protective umbrella serving to enhance a constitutional guarantee' " that was already in place. *Id.* (quoting *Payne,* 412 U.S. at 54, 93 S.Ct. at 1970).

The foregoing analysis under the first prong of *Andrews* supports our conclusion that today's rule not be applied retroactively. Analysis under the other two prongs (the extent of reliance on the old rule and the effect on the administration of justice if the

new rule is applied retroactively) also supports this conclusion.

To elaborate, the Board has reasonably relied on the former rule that post-revocation parole grant hearings were not subject to any particular due process requirements. To declare invalid all such hearings held in accordance with this former rule "would work a fundamental injustice on the Board, the judiciary, and the citizens of this state." *Id.* 870 P.2d at 913. As in *Labrum,* "the Board's . . . reliance on the old procedural standards favors nonretroactivity." *Id.*

In addition, retroactive application of today's rule requiring the Board to reopen every parole hearing at which it established an inmate's release date would create a backlog that would wreak havoc on the parole system. Though not unheard of, the imposition of such a burden on the justice system is impractical and is not justified in this case.

Accordingly, today's decision applies only to those parole grant hearings held on or after the date of this decision. We extend the benefits of this decision to David Neel and to any inmate who currently has a similar claim pending in the district court or on appeal before this court or the court of appeals. *Id.* at 914.

We reiterate that "a decision of nonretroactivity does not foreclose collateral suits by inmates who can show some evidence that the Board violated their rights to due process" in a prior parole grant hearing. *Id.* at 913 (citing *Payne,* 412 U.S. at 54–55, 93 S.Ct. at 1970). "However, [such] an inmate . . . may not use the specific due process standards we announce today to make that evidentiary showing." *Id.*

Based on the foregoing analysis, we reverse and remand for a new hearing before the Board to be held in accordance with the requirements of this opinion.

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON, JJ., concur.