Stacy Ray PETERSON, Petitioner, Appellee, and Cross-appellant,

v.

UTAH BOARD OF PARDONS, Respondent, Appellant, and Cross-appellee.

No. 960247–CA.

Court of Appeals of Utah.

Jan. 16, 1997.

Jan Graham and Brent A. Burnett, Salt Lake City, for Appellant.

David L. Arrington and Eric E. Vernon, Salt Lake City, for Appellee.

Before DAVIS, WILKINS and BENCH, JJ.

WILKINS, Associate Presiding Judge:

The Utah Board of Pardons (the Board) appeals the trial court's order partially

granting Stacy Ray Peterson's amended petition for extraordinary relief. Peterson cross-appeals the portion of that order denying him a new, plenary hearing. We reverse.

## BACKGROUND

Peterson pleaded guilty in March 1989 to second degree murder and was sentenced to serve a term of five years to life, with an additional five-year firearm enhancement, at the Utah State Prison. After his original parole hearing, Peterson received a date for a rehearing instead of a parole date. Later, before his rehearing, Peterson received both a notice of the hearing and his Board of Pardons and Parole disclosure file.

At the rehearing in May 1994, Peterson was given additional documents. These documents consisted of copies of prison disciplinaries Peterson had received since his original parole hearing and of letters from his family to the Board. Because Peterson had not received these documents before the rehearing, the hearing officer expressly asked Peterson if he would like additional time to prepare for the rehearing. Peterson reviewed the new documents during the rehearing, and stated he did not need or want additional time to review the new documents:

HEARING OFFICER: ... Mr. Peterson, I handed you some other blue pages, there.

PETERSON: Yes, Ma'am[.]

HEARING OFFICER: And I did not give you an opportunity to read through those. Most of those, if you will look at them, sir ...

PETERSON: Um, it looks as though it's just the letters from my sister and stuff like that.

HEARING OFFICER: I was going to say that most of that is either information on the disciplinaries which I believe you already had, but wanted to make sure you had a copy, or some family letters. *Do you need any further time* ... [?]

PETERSON: Ma'am, I don't really need to go through all this paper work just ... I'm here on a homicide charge, I need to take responsibility for that.

HEARING OFFICER: No. But I also need to know, for today's hearing that you know what is, are in those blue pages. If you need ...

PETERSON: I don't, Ma'am[.] [H]e just handed it to me walking in this hearing room.

HEARING OFFICER: Then I want you to ... I want you to take time, sir, right now to look through them to the extent that you see, that you feel that it's necessary to know what's in those. You need to know what decisions the Board of Pardons, what the Board of Pardons is going to make this ...

PETERSON: Okay, what I've seen so far is letters from my parents, um, letters from my sister[.] There is, uh, quite a bit of paperwork on this visiting, visiting write up. Um, [ ... ]

HEARING OFFICER: *Are you saying you would like to reschedule* ... *[?]*

PETERSON: Uh, Ma'am, it's basically, I went to disciplinary, I was found guilty. [W]hatever....

HEARING OFFICER: Have you read through the paperwork as you feel like you need to ... [?]

PETERSON: Yeah, as a matter of fact, I don't feel that I need to go into detail into it or ...

HEARING OFFICER: I just want for you to affirm though that you feel like you've had the necessary time to read the information.

PETERSON: Yes, Ma'am[.] Yes.

(Emphasis added.)

Later during the rehearing, Peterson observed that reports and notes from his therapist, Tom Felton, were absent and that the file drew into question whether Peterson actually had obtained the counseling. Peterson explained to the hearing officer:

[W]hat get's me with um, all of the paperwork that I've received, there is nothing in there from my psychologist's [sic].

....

I've been seeing a therapist named Tom Felton for two years now. And there is no records in here what-so-ever that I've been seeing him. Lynette made a comment

throughout the report saying that there was no record showing that I had been seen by Tom Felton. She is the one that recommended me to him, referred me to him. So I don't know what kind of, why she would even type something like that when she knows for a fact that I see this man once a week, and um, at one point, I was actually seeing him twice a week because I was going back into my childhood and trying to figure out exactly who I am. My murder anonymous class is what I call a murder anonymous class, it's something that I have been attending for, for about four and a half years. We've went through three therapists so far. And I believe the information you have is just our last group of therapists.... And there are five of us that get together in a room once a week for two hours and we talk and we listen to how this guy was coping with his homicide. How I'm coping with my homicide and so on and so on. Worker's [sic] don't do anything.

The hearing officer responded to Peterson's comment by saying: "Okay, thank you. Anything else before we get to the psychological assessment that you want to state as far as your institutional report goes?"

Neither Peterson nor the hearing officer mentioned the missing Felton counseling information again during the rehearing. Peterson did not provide the hearing officer with any further information concerning his work with Felton. He also did not ask the hearing officer for more time to obtain this information, nor did he ask the hearing officer to seek out further information concerning his treatment sessions with Felton. In addition, the hearing officer did not volunteer to continue the rehearing until information concerning Peterson's work with Felton was retrieved.

However, towards the end of the rehearing, the hearing officer did provide Peterson with "an opportunity to make any other comments [he wanted] to make." Peterson did not mention Felton at this point. Instead,

Peterson chose to talk about the victim and Peterson's desire to be granted parole.

Following the rehearing, the Board decided not to give Peterson a parole date, but instead scheduled another rehearing date of April 2008.

Following the Board's decision, Peterson presented the trial court with Felton's affidavit and supporting documents through his attorney. This information was then presented to the Board by way of a special attention hearing, which Peterson was not invited to attend. After reviewing the additional documents, the Board concluded that the new information did not alter its prior decision to set a rehearing date of April 2008.

Peterson then filed a petition for extraordinary relief, advancing two arguments based on his claim that he was denied due process because the documents providing information regarding Peterson's counseling sessions with Felton were absent from his file at his parole rehearing. First, Peterson argued he was not allowed sufficient time and opportunity under the circumstances of his rehearing to supplement his file with the Felton counseling information or to present it in person, and that due process required the Board to address this concern by giving Peterson more time to retrieve the missing information. Second, Peterson argued due process required that he be granted a new, plenary hearing so he could present and discuss the Felton counseling information in person.[1]

The trial court partially granted Peterson's petition, ruling the "Board should have provided additional time to Mr. Peterson to acquire information and prepare," and because it did not, the Board violated Peterson's due process rights. As a result, the court granted Peterson another hearing within sixty days at which Peterson could appear in person to address the Felton counseling information and its effect on the Board's decision to grant him parole. However, the court concluded it did not have power to order a

1. Peterson originally presented additional arguments in his petition; however, after a scheduling conference, Peterson expressly stated that his only argument was that he was denied due process because documents containing information of his counseling sessions with Felton were missing from his file during his rehearing, and that he did not oppose the Board's motion to dismiss as it related to his other arguments.

plenary hearing and therefore denied that part of Peterson's petition.

The Board appeals the trial court's ruling that Peterson's due process rights were violated because the Board did not provide him with additional time to acquire the missing counseling information. In addition, Peterson cross-appeals the court's denial of his request for a new, plenary hearing.

## ISSUES AND STANDARD OF REVIEW

This case presents us with two issues: (1) whether the Board has a constitutional duty to continue a parole hearing when the inmate notices a document is missing from his file, even if the inmate does not request a continuance when given the opportunity; and (2) whether the trial court incorrectly held it lacked authority to order a plenary rehearing. Both issues are questions of law, which we review for correctness. *See Lancaster v. Utah Bd. of Pardons,* 869 P.2d 945, 947 (Utah 1994); *see generally State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

■ In addressing the Board's appeal of the trial court's order, we emphasize that fundamental principles of due process under article I, section 7 of the Utah Constitution apply to parole grant hearings. *See Neel v. Holden,* 886 P.2d 1097, 1101 (Utah 1994) (extending due process rights announced in *Labrum v. Utah State Bd. of Pardons,* 870 P.2d 902 (Utah 1993), to other parole hearings in which inmates' release dates are fixed or extended); *Preece v. House,* 886 P.2d 508, 512 (Utah 1994) (applying due process requirements to parole grant hearing); *Labrum,* 870 P.2d at 911 (applying due process rights to original parole grant hearings at which predicted terms of incarceration are determined). *But cf. Malek v. Haun,* 26 F.3d 1013, 1016 (10th Cir.1994) (holding Utah parole statute does not create liberty interest entitling inmate to federal due process protection under Constitution). Specifically, two due process requirements must be met in parole grant hearings. First, an inmate must receive adequate notice to prepare for a parole hearing. *Labrum,* 870 P.2d at 904, 909, 911; *see also* Utah Code Ann. § 77–27–

5(2)(a) (Supp.1996) (requiring defendant be given timely prior notice of parole hearings). Second, an inmate must receive copies or a summary of the information in the Board's file upon which the Board will rely in deciding whether to grant parole (the second due process requirement). *Labrum,* 870 P.2d at 904, 909, 911; *see also* Utah Code Admin.P. R671–303–1 (requiring that at all hearings where offender personally appears, offender be provided with general summary of any information on which Board intends to rely in making its decision, and offender have opportunity to respond to summary). The second due process requirement "requires that the inmate know what information the Board will be considering at the hearing and that the inmate know soon enough in advance to have a reasonable opportunity to prepare responses and rebuttal of inaccuracies." *Labrum,* 870 P.2d at 909. Thus, although the Board exercises unfettered discretion in determining the length of an inmate's sentence, its actions must not violate the inmate's constitutional rights. *Rawlings v. Holden,* 869 P.2d 958, 961 (Utah App.1994). Because of the critical nature of the Board's decision, these rights apply in parole hearings, even when only another hearing date is set, such as the hearing at issue in this case. *Labrum,* 870 P.2d at 909. Therefore, Peterson was entitled to these important due process procedures at his parole hearing.

■ Peterson does not dispute that he was given adequate notice of his hearing, nor does he assert that the Board did not give him copies or a summary of the information in its file upon which it relied in deciding whether to grant him parole. Instead, Peterson argues, and the trial court found, that his due process rights were violated because the Board failed to continue his parole hearing when Peterson called to the hearing officer's attention that the Felton counseling information was missing from his file, even though Peterson never requested a continuance or asked to be able to retrieve the Felton information.

Although Peterson has not presented his argument as such, we perceive that he essentially argues that although he received copies

of the information in his file upon which the Board relied, the second due process requirement nevertheless was violated because the requirement's functions were not served. Therefore, Peterson appears to argue that the second due process requirement required the Board to give him additional time to obtain and present the Felton counseling information when he discovered, at his rehearing, that the information was missing from his file and that the file incorrectly stated he had not counseled with Felton.

The court in *Labrum* explained that accuracy and legitimacy are the two critical functions implicated by the second due process requirement. *See id.* at 909–10. Regarding accuracy, or "minimizing error," the court emphasized that an inmate must be given an opportunity to point out inaccuracies in the materials and information upon which the Board relies:

> "It is essential to both the form and substance of a fair proceeding that the defendant have the right to point out errors, misinterpretations, or even to demonstrate that he is not in fact the person who is the subject of the report. Such errors are not unknown. Particularly when the criminal justice system is being pressed to deal with ever more criminal defendants on an impersonal basis ..., the possibility of error becomes even greater."

*Id.* at 909 (quoting *State v. Casarez*, 656 P.2d 1005, 1008 (Utah 1982)); *see also Neel,* 886 P.2d at 1103 ("[O]ur decision to extend due process rights based on article I, section 7 of the Utah Constitution is grounded in our concern that the Board might rely on inaccurate factual information in denying a parole bid."); *cf. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 13, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) ("The function of legal process, as that concept is embodied in the Constitution, and in the realm of factfinding, is to minimize the risk of erroneous decisions.").

█ Regarding legitimacy, or "preserving the integrity of the process itself," the *Labrum* court explained that a vital part of due process doctrine is following procedures that maintain both the appearance of fairness and the inmates' confidence in the process. *Lab-*

*rum,* 870 P.2d at 909. The court quoted Justice Marshall to emphasize the importance of legitimacy:

> "[T]his Court has stressed the importance of adopting procedures that preserve the appearance of fairness and the confidence of inmates in the decisionmaking process. The Chief Justice recognized ... that 'fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness,' a view shared by legislators, courts, the American Bar Association, and other commentators. This consideration is equally significant whether liberty interests are extinguished in parole release or parole revocation proceedings."

*Id.* at 910 (citations omitted) (quoting *Greenholtz,* 442 U.S. at 34, 99 S.Ct. at 2117 (Marshall, J., dissenting)). The *Labrum* court also explained that procedural regularity serves as a "psychological stabilizer," and " 'acceptance of law is substantially furthered to the extent that those subject to its rule observe its workings with consistent, scrupulous fairness.' " *Labrum,* 870 P.2d at 910 (citation omitted). Therefore, although due process demands flexibility, *see id.* at 911; *Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106, it also demands consistency to preserve fairness and procedural regularity.

After examining Peterson's parole rehearing, we hold the trial court erred in concluding Peterson's due process rights were violated. Before the Board's hearing, Peterson was given time to review the Board's file and to prepare or request any information he wanted the Board to consider in making its determination. At the hearing, Peterson was given an opportunity to present information and to address the information in his file. Although Peterson was given more information at his rehearing, the hearing officer expressly asked him if he wanted to reschedule the hearing to give him more time to read through the new information, and Peterson specifically responded that he did not want or need more time. Therefore, contrary to Peterson's argument, he was given an opportunity to look through his file and point out any errors, misinterpretations, or inaccuracies.

In addition, Peterson did point out inaccuracies in his file during his discussion with the hearing officer regarding the missing Felton counseling information. Peterson specifically told the hearing officer the file erroneously stated that he had not counseled with Felton, and then, in detail, explained how often he had seen Felton. Upon finding this incorrect information in his file, Peterson could have requested a continuance to allow him to present documentation, affidavits, or other information to disprove any facts in dispute. *See* Utah Code Admin.P. R671–303–1. However, Peterson never stated that he wanted more time to retrieve the Felton counseling documents or even that he wanted the Board to examine that information.

In addition, the hearing officer asked Peterson at the end of the hearing if there was anything else Peterson wanted to discuss, and Peterson did not even mention the missing counseling information. Therefore, Peterson was given ample opportunity to correct any errors contained in his file, and the procedure the Board followed "adequately safeguard[ed] against serious risks of error and thus satisfie[d] due process." *Greenholtz*, 442 U.S. at 15, 99 S.Ct. at 2108.

■ We emphasize that the Board is a neutral body, and while the Board has the important obligation of following due process requirements in holding parole hearings, it also is obligated to hold, and offenders are entitled to receive, impartial hearings. *See* Utah Code Admin.P. R671–309–1. The inmate, therefore, rather than the Board, bears the burden of reviewing the file and requesting more time upon discovering it lacks information the Board should consider. The trial court's ruling, however, effectively shifts this burden by essentially requiring the Board to insist on continuing Peterson's rehearing, even after Peterson expressly stated he did not want or need more time, and even though Peterson did not mention the missing counseling information when given the opportunity at the end of the hearing. To shift the burden from the inmate to the Board in this way jeopardizes the Board's neutrality because it would require the Board to insist on continuances despite an inmate's insistence to the contrary, and therefore put the Board in a position of acting somewhat as the inmate's advocate.

Shifting the burden also would jeopardize accuracy and legitimacy, two functions of due process upon which the second due process requirement is premised. *See Labrum*, 870 P.2d at 909–10 (stating accuracy and legitimacy are two critical functions related to due process implicated by second due process requirement). The Board would be required to decipher from a prisoner's comments whether the prisoner needed or wanted a continuance to better prepare for a hearing. Such a procedure would inevitably create inconsistent results because the Board would be required to act upon its interpretation of inmates' needs and desires rather than upon inmates' clear requests. Accuracy and legitimacy, and a fair procedure, are better preserved by having prisoners bear the burden of requesting more time to retrieve missing information, such as the Felton counseling reports at issue in this case.[2]

Because we hold the trial court erred by ruling Peterson's due process rights were violated, we need not reach Peterson's cross-appeal, which is based upon the premise that his due process rights were violated.

## CONCLUSION

Therefore, we hold the trial court erred in concluding Peterson's due process rights were violated because the Board failed to provide him with sufficient time to retrieve and present the Felton counseling reports. The Board met both the requirements and the underlying functions of due process, as expressed in existing case law; therefore, the Board was not constitutionally obligated to insist that the hearing be continued until Peterson could retrieve the missing information. Accordingly, we reverse the trial court's order.

BENCH, J., concurs.

2. We emphasize that our decision is based on preserving due process and not on the fear of creating an administrative burden. *See Labrum*

*v. Utah State Bd. of Pardons,* 870 P.2d 902, 911 (Utah 1993).

**DAVIS, Presiding Judge (dissenting):**

I respectfully dissent from the majority opinion. In particular, I disagree with the majority's characterization of the issues presented on appeal. The majority focuses primarily on "whether the Board has a constitutional duty to continue a parole hearing when the inmate notices a document is missing from his file, even if the inmate does not request a continuance when given the opportunity." I essentially agree that the Board has no such "constitutional duty." However, I do not agree that the Board gave Peterson an opportunity to request a continuance once he alerted the hearing officer that his file lacked the Felton information or that he waived his right to have that information before the Board. Thus, our focus should be whether Peterson's due process rights were violated and, if so, whether he waived them in light of the colloquy between Peterson and the hearing officer concerning the Felton materials.[1]

In *State v. Rawlings*, 893 P.2d 1063 (Utah App.1995), this court noted:

"a defendant may waive his or her constitutional right to due process. However, '[u]nder the due process clause, [a defendant is] entitled to have [adequate notice] imparted to him [or her]; that he [or she] might make an intelligent and informed decision as to whether to waive his [or her] constitutional right to a . . . hearing.' "

*Id.* at 1070 (alterations in original) (citation omitted). Moreover, the propriety of extending due process to Board proceedings has been established by the Utah Supreme Court, which declared: "[D]ue process pursuant to article 1, section 7 of the Utah Constitution requires that the inmate know what information the Board will be considering at the hearing and that the inmate know soon enough in advance to have a reasonable

opportunity to prepare responses and *rebuttal of inaccuracies.*" *Labrum v. Utah State Bd. of Pardons,* 870 P.2d 902, 909 (Utah 1993) (emphasis added) (footnote omitted).

At his hearing, Peterson was given materials not previously disclosed to him. He summarily reviewed the materials and then, after a lengthy colloquy during which the hearing officer carefully protected Peterson's due process rights, acknowledged he was ready to proceed. The hearing officer noted Peterson's participation in certain prison programs, invited him to tell her about other programs, and gave him two opportunities to make "any other comments." Yet, as the hearing progressed, Peterson noted that reports from Felton, his therapist, were not in the file.[2] The Board argues that both Peterson's statements and his colloquy with the hearing officer amount to a waiver of any claim he has to have the Board consider the Felton documents in a hearing context in his presence. However, Peterson's statements and colloquy about the Felton documents are, at best, ambiguous and in no way amount to a knowing and intelligent waiver of his due process claim. At one point during the hearing Peterson noted,

What get's me with um, all of the paper work that I've received, there is nothing in there from my psychologist's [sic]. . . . I've been seeing a therapist name Tom Felton for two years now. And there is no records [sic] in here what-so-ever that I've been seeing him. Lynette[3] made a comment throughout the report saying that there was no record showing that I had been seen by Tom Felton. She is the one that recommended me to him, referred me to him. So I don't know what kind of, why she would even type something like that when she knows for a fact that I see this

---

1. On appeal, the Board claims the trial court imposed an "affirmative constitutional duty to seek out and obtain evidence that an inmate mentions but does not present." In response, Peterson argues that the trial court did not impose an affirmative information gathering duty on the Board. I agree. The subject order merely states that "[t]he Board should have provided additional time to Mr. Peterson to acquire information and prepare." Thus, the question of the Board's constitutional duty, if any, to assist in

information gathering in preparation for a parole hearing is not before us, and does not warrant consideration.

2. It is undisputed that Peterson was entitled to have the Board consider the Felton reports.

3. At the relevant time, Lynette Vance was Peterson's caseworker. The record does not reflect when or how Peterson became aware of the inaccuracy.

man once a week, and um, at one point, I was actually seeing him twice a week. . . . Despite this revelation, the hearing officer did not even make a simple inquiry of Peterson to determine whether he wished to proceed in the absence of the Felton documents, let alone continue the hearing. Instead, the hearing officer simply said "Okay, thank you. Anything else before we get to the psychological assessment that you want to state as far as your institutional report goes?"

This exchange stands in stark contrast to the colloquy that occurred at the onset of the hearing. There, the hearing officer went to great lengths to ascertain whether Peterson wanted to continue his parole hearing because he was handed materials upon entering the hearing, giving him insufficient time to prepare. No such protection was given after Peterson informed the hearing officer of the missing Felton information that, allegedly, Ms. Vance had erroneously excluded from his record.[4]

The Utah Constitution guarantees prisoners the right to rebut inaccuracies in the information considered at the inmate's hearing. *See* Utah Const. art. I, § 7; *Labrum*, 870 P.2d at 909. As the majority notes, the likelihood of errors in an inmate's file renders it

> "essential to both the form and substance of a fair proceeding that the defendant have the right to point out errors, misinterpretations, or even to demonstrate that he is not in fact the person who is the subject of the report. Such errors are not unknown. Particularly when the criminal justice system is being pressed to deal with ever more criminal defendants on an impersonal basis . . ., the possibility of error becomes even greater."

*Labrum*, 870 P.2d at 909 (quoting *State v. Casarez*, 656 P.2d 1005, 1008 (Utah 1982)). The majority opinion also cites *Neel v. Holden*, 886 P.2d 1097, 1103 (Utah 1994), and *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 13, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979), for the proposition that erroneous decisions based on inaccurate factual information compel the extension of due process rights to parole hearings. Obviously, Peterson highlighted a significant inaccuracy in his file.

Though the record does not show when or how Peterson discovered the inaccuracy and omission, under the circumstances, the hearing officer could easily have ascertained whether Peterson wanted to proceed in the absence of the Felton documents, and whether he waived any due process claim, by the simple expedient of asking him a couple of questions specifically addressing his concerns.[5] The majority notes that "Peterson did point out inaccuracies in his file during his discussion with the hearing officer regarding the missing Felton information. Peterson told the hearing officer the file erroneously stated he had not counseled with Felton, and then, in detail, explained how often he had seen Felton." However, at a minimum, Peterson should have been permitted to obtain the omitted documentation. It makes little sense to carefully protect Peterson's due process rights with reference to documents containing facts with which he was familiar and ignore those rights with reference to information totally omitted.

The Board's subsequent Special Attention Review consideration of the Felton evidence, out of Peterson's presence, does not remedy the due process violation committed here.[6]

4. The trial court recognized the hearing officer's disinterest in Peterson's concern over the Felton information:

> Moreover, [Peterson] recognized at the hearing that Mr. Felton's information wasn't in the file at all, and he brought that to the Hearing Officer's attention. The Hearing Officer saw that need for a continuance. And instead of doing what procedurally was correct, the Hearing Officer laid it on his lap. And that is backwards. They know what procedural due process is about, and they ought to afford it without the prisoner being put in that position.

5. Contrary to the Board's assertion, this would not create an affirmative obligation on the Board to request a continuance sua sponte.

6. While the matter was pending in the trial court, the Board held a Special Attention Review to review evidence from Mr. Felton. Pursuant to Utah Administrative Code Rule 671–311–3, a Special Attention Review is "processed administratively based on written reports supplied to the Board without the personal appearance of the offender."

As determined in *Labrum,* an inmate must be provided a reasonable opportunity, with proper notice having been given, to "prepare responses and rebuttal of inaccuracies." 870 P.2d at 909. Because the Board's Special Attention Review does not require the presence of the inmate, that proceeding gave Peterson no opportunity to challenge inaccuracies, and thus did not remedy the initial due process violation.

Obviously, the foregoing analysis does not remotely suggest an affirmative obligation on the Board's part to continue a hearing, nor does it suggest that a constitutional right cannot be waived. It does, however, suggest that where waiver is relied upon (as here by both the Board and the majority), that waiver must have in fact occurred.

Addressing Peterson's concerns regarding the rehearing, the trial court determined that he was entitled to a new hearing to "appear in person to address evidence related to his counseling with Thomas Laton Felton, and the possible affect [sic] this evidence may have on the Board's consideration of [him]." Peterson contends that it would be meaningless to hold another hearing unless it was plenary. I disagree. Peterson's only complaint with the proceedings before the Board was its failure to consider evidence from Mr. Felton under circumstances where he can participate. Peterson fails to explain why the evidence regarding his sessions with Felton must be heard in conjunction with evidence given at his first hearing. Moreover, he fails to persuasively demonstrate why, if at all, a plenary hearing, rather than a hearing to consider the Felton evidence alone, is necessary to remedy the due process violation in this instance.[7] Thus, he has not supported his request for a plenary hearing. Unlike his previous hearing, Peterson would have the opportunity to appear before the Board and present evidence concerning his counseling sessions at a hearing for that specific purpose, thereby remedying the due process violation about which Peterson complains.

Accordingly, I would affirm the trial court's order in its entirety.

---

**7.** Peterson relies on *Labrum v. Utah State Board of Pardons,* 870 P.2d 902, 914 (Utah 1993), and *Neel v. Holden,* 886 P.2d 1097, 1105 (Utah 1994), to support his assertion that "the Utah Supreme Court has ordered full rehearings before the Board in cases where due process was denied." However, the due process violations at issue in both *Labrum* and *Neel* were far more egregious than the relatively minor violation presented for our review.