STATE of Utah, Plaintiff and Appellee,

v.

Thomas BYINGTON, Defendant and Appellant.

No. 950803–CA.

Court of Appeals of Utah.

April 10, 1997.

David M. Perry, Logan, for Appellant.

Jan Graham and Barnard N. Madsen, Salt Lake City, for Appellee.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Thomas Byington appeals the trial court's revocation of his probation. We affirm.

## BACKGROUND

Byington was convicted of one count of sexual abuse of a child, a second degree felony, in violation of Utah Code Ann. § 76–5–404.1 (1995) (current version at Utah Code Ann. § 76–5–401.1 (Supp.1996)). On July 7, 1994, he was sentenced to one to fifteen years in prison. That sentence was suspended, and Byington was placed on probation for two years.

As part of the standard probation agreement, Byington agreed to refrain from using illegal drugs, and as an additional condition, he agreed to complete sex-offender therapy at the Fremont Community Center. On September 27, 1995, an affidavit in support of an order to show cause was filed, alleging that Byington had used marijuana and had failed to successfully complete the Fremont program.

On October 23, 1995, a hearing was held to determine whether Byington's probation should be revoked. At this hearing, Byington did not have an attorney. The following exchange took place between the trial court and Byington:

> THE COURT: You were sentenced to serve fifteen years in the Utah State Prison, but that was delayed and you were placed on probation. The allegations are that you have used a controlled substance, to wit, marijuana, on about [sic] July of 1995 and September of 1995 in violation of . . . your probation agreement, and you have failed to successfully complete the Fremont Community Correctional Program in violation of [your parole agreement]. Now, before you respond to those allegations, Mr. Byington, do you want the assistance of an Attorney?

> MR. BYINGTON: No, your honor.

> THE COURT: You understand, do you not, that if you cannot afford an Attorney I would appoint one to represent you?

> MR. BYINGTON: Yes, Your Honor.

> THE COURT: Nevertheless, you're waiving that right?

> MR. BYINGTON: Yes, Your Honor. I am.

> THE COURT: Tell me why you're willing to waive the right.

> MR. BYINGTON: When I made the decision to go to my Therapist and my Probation Officer and inform them that I was indeed smoking marijuana again, I made the decision to also pay whatever price deemed necessary for me for—for making the choice to break the law. Therefore, I see no reason to have a lawyer to fight something that I'm guilty of.

> THE COURT: Well, let me just indicate to you that, and I'm not trying to encourage you to ask for a lawyer, but you may be guilty of the offense, and I'll get to that in just a minute, or guilty of the violation more appropriately, but what the Court does with the violation may be of grave concern to yourself and to Counsel, and Counsel may be of assistance in that regard. I don't know what the State's position is on this case, but I want you to understand that possibility anyway.

> Now, as far as the—whether or not you're in violation, I'll certainly defer to your decision in that case. As to the Affidavit then, under Paragraph No. 1, you admit that on July and September [sic] you . . . used . . . marijuana?

> MR. BYINGTON: Yes, Your Honor.

> THE COURT: And you admit that you failed to successfully complete the Fremont Community Correctional Center Program?

> MR. BYINGTON: Yes, Your Honor.

Subsequent to this exchange, the trial court discovered that Byington had not received a copy of a violation report prepared by Byington's probation officer. The trial court gave Byington time to review the report. After reviewing the report, Byington noted,

> nowhere in that report [did] it state that—that it was me that went to them and informed them that I was using marijuana and requesting help. It stated that I was found on several—several occasions unaccountable, and, in fact, it was only on one account that I was found unaccountable,

and was only unaccountable on one—one instance.

Additionally, Byington corrected the trial court's earlier misstatement that his sentence was for fifteen years, noting that the sentence was actually one to fifteen years.

At the end of the hearing, the trial court revoked Byington's probation and ordered that he serve his original sentence.

## ISSUES

This appeal raises the following issues: (1) Did the trial court err by failing to conduct a sufficiently detailed and probing colloquy with Byington before allowing him to waive counsel; and (2) were Byington's due process rights violated because he did not receive a copy of the violation report before the revocation hearing?

## STANDARD OF REVIEW

■ We review whether the right to counsel has been properly waived for correctness, but grant the trial court a reasonable measure of discretion when applying the law to the facts. *See State v. McDonald,* 922 P.2d 776, 780–81 (Utah.Ct.App.1996). Similarly, the extent to which the Utah Constitution applies to judicial proceedings also presents an issue of law which we review for correctness. *See Labrum v. Utah State Bd. of Pardons,* 870 P.2d 902, 904 (Utah 1993).

## ANALYSIS

### Waiver of Counsel

■ Byington argues that his waiver of counsel at the probation revocation hearing was improper because it was not knowing and intelligent.[1] Specifically, Byington argues that he was entitled to extensive admo-

nitions regarding self-representation as discussed in *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975), and *State v. Frampton,* 737 P.2d 183, 187–89 (Utah 1987). The State maintains that the exacting *Faretta* and *Frampton* standard for effecting a proper waiver of counsel applies only to the waiver of a constitutional right to counsel. Accordingly, the State argues the less extensive colloquy in this case was sufficient to render Byington's waiver of his statutory right to counsel proper.

■ The assistance of counsel at a probation revocation hearing is constitutionally guaranteed only in certain circumstances. *See Gagnon v. Scarpelli,* 411 U.S. 778, 790–91, 93 S.Ct. 1756, 1763–64, 36 L.Ed.2d 656 (1973); *accord Neel v. Holden,* 886 P.2d 1097, 1103–04 (Utah 1994). In *Scarpelli,* the United States Supreme Court expressly declined to "formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements." *Scarpelli,* 411 U.S. at 790, 93 S.Ct. at 1764. Instead, the Court noted that

> it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for appointment of counsel, the

---

1. Byington also suggests that he was not competent to waive counsel and that the trial court's failure to investigate his competency to waive counsel was error. However, a trial court must make an independent, express determination regarding competency "only when [the trial court] has reason to doubt the defendant's competence." *Godinez v. Moran,* 509 U.S. 389, 401 n. 13, 113 S.Ct. 2680, 2688 n. 13, 125 L.Ed.2d 321 (1993); *see also York v. Shulsen,* 875 P.2d 590, 594 (Utah.Ct.App.1994) ("[D]ue process requires a court to sua sponte determine competency be-

fore taking a guilty plea when there is substantial evidence of incompetence such that a reasonable judge would have a bona fide doubt as to the defendant's competence."). Byington does not claim that any objective facts apparent at the hearing should have alerted the trial court that he was not competent. Indeed, aside from Byington's unsupported assertion that he was "depressed and apathetic" at the hearing, he gives no indication of what made him incompetent to proceed. Therefore, this claim is without merit.

responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself.

*Id.* at 790–91, 93 S.Ct. at 1764. Similarly, in the analogous context of parole grant hearings,[2] the Utah Supreme Court has noted that the Sixth Amendment right to counsel does not apply, although due process may apply depending on the circumstances. *See Monson v. Carver*, 928 P.2d 1017, 1029 (Utah 1996) (plurality opinion) (citing *Scarpelli*, 411 U.S. at 787–90, 93 S.Ct. at 1762–64).

■ To protect the *constitutional* right to counsel, a trial court must "determine if this waiver is a voluntary one which is knowingly and intelligently made." *Frampton*, 737 P.2d at 187; *accord Godinez v. Moran*, 509 U.S. 389, 400–04, 113 S.Ct. 2680, 2687–88, 125 L.Ed.2d 321 (1993). As the *Frampton* court noted, "Generally, this information can only be elicited after penetrating questioning by the trial court." *Frampton*, 737 P.2d at 187. Accordingly, the *Frampton* standard contemplates extensive probing by the trial court or clear record evidence to establish a defendant's choice to waive the constitutional right to counsel is clearly informed, both with respect to the proceedings and to the implications of continuing pro se.

■ In the instant case, Byington did not contest the alleged probation violations, nor did he present any argument regarding why his probation should not have been revoked. As noted by the *Scarpelli* Court, a probationer's "admission to having committed another serious crime creates the very sort of situation in which counsel need not ordinarily be provided." *Scarpelli*, 411 U.S. at 791, 93 S.Ct. at 1764. Therefore, under

the circumstances of this case, Byington was not constitutionally entitled to counsel at the probation revocation hearing.[3]

■ Nonetheless, Byington was entitled to counsel at the probation revocation hearing in accordance with Utah statutory law. *See* Utah Code Ann. § 77–18–1(12)(c)(iii) (Supp. 1996) ("The order to show cause shall inform the defendant of a right to be represented by counsel at the hearing and to have counsel appointed for him if he is indigent."). However, the strict *Frampton* standards for safeguarding the constitutional right to counsel do not apply where the right to counsel is provided for by statute because procedural rights do not generally warrant the same protections as do constitutional rights. *See People v. Clark*, 157 Ill.App.3d 371, 110 Ill. Dec. 225, 226–27, 510 N.E.2d 1256, 1257–58 (1987) ("A defendant at a parole revocation hearing is entitled to some due process protections, but since such a defendant already stands convicted of the underlying offense, only 'minimum' due process protections are required." (citing *Scarpelli*, 411 U.S. at 782, 93 S.Ct. at 1759–60)); *Jester v. Board of Probation & Parole*, 141 Pa.Cmwlth. 355, 595 A.2d 748, 751 (1991) ("[T]he parolee's right to counsel in parole revocation proceedings does not always rise to the magnitude of a constitutionally-mandated right, but reasonable steps must be taken to ensure that a parolee has an ample opportunity to retain counsel of his or her choice or secure the services of the public defender."); *State v. Conlin*, 49 Wash. App. 593, 744 P.2d 1094, 1096 (1987) ("Procedural and constitutional rights are treated differently."); *cf. Neel*, 886 P.2d at 1104 (noting analytical distinction between statutory and constitutional right to counsel).

---

**2.** The cases relevant to Byington's appeal deal both with parole and probation proceedings. Technically, these proceedings are distinct, and the Utah Code deals with them in different provisions. *Compare* Utah Code Ann. § 77–18–1(12) (1995) (addressing procedures for probation hearings), *with* Utah Code Ann. §§ 77–27–2 to –13 (1995) (addressing parole hearings). For purposes of the analysis here, however, we discuss precedent relevant to both, interchangeably. *Cf., e.g., Gagnon v. Scarpelli*, 411 U.S. 778, 781 & n. 3, 93 S.Ct. 1756, 1759 & n. 3, 36 L.Ed.2d 656 (1973) (noting similarity between probation and parole for purposes of constitutional analysis).

**3.** In *State v. Eichler*, 25 Utah 2d 421, 483 P.2d 887, 889 (1971), the Utah Supreme Court suggested that probationers have a blanket, constitutional right to counsel at probation revocation hearings. However, *Eichler* was decided before the United States Supreme Court's decision in *Scarpelli*. Thus, to the extent *Eichler* declares a blanket right to counsel at all probation revocation hearings—in contravention of *Scarpelli's* holding—*Scarpelli* controls, at least as concerns rights under the Federal Constitution.

Rather, waiver of a statutory right to counsel is proper as long as the record as a whole reflects the probationer's reasonable understanding of the proceedings and awareness of the right to counsel. *See Coon v. State,* 675 So.2d 94, 96–97 (Ala.Crim. App.1995); *Clark,* 110 Ill.Dec. at 227, 510 N.E.2d at 1258; *Jester,* 595 A.2d at 751; *Conlin,* 744 P.2d at 1096. As with the standard for waiving the constitutional right to counsel, we decline to establish bright-line rules for determining the proper waiver of the statutory right to counsel. *Cf. Frampton,* 737 P.2d at 188. Instead, whether a waiver has properly been made under this lower standard will turn "upon the particular facts and circumstances surrounding each case." *Id.*

In the instant case, the trial court clearly informed Byington of the allegations against him, that counsel would be appointed if he requested, and that counsel might be able to assist him in the proceedings. Moreover, Byington was clearly aware of his original sentence and thus the consequences of his probation being revoked. Therefore, we cannot say that the trial court committed error in accepting Byington's waiver of his statutory right to counsel in this case.

### Due Process

Byington claims that he should have received a copy of the violation report regarding his progress at the Fremont Center before the hearing. As support for this argument, Byington cites authority that relates specifically to the requirement that the State provide copies of presentence reports to defendants before sentencing. *See* Utah Code Ann. § 77–18–1(6)(a) (Supp.1996) ("The department shall provide the presentence investigation report to the defendant[ ] ... three working days prior to sentencing.").

In *Labrum v. Utah State Board of Pardons,* 870 P.2d 902, 911 (Utah 1993), the Utah Supreme Court concluded that the due process guarantees of article I, section 7 of the Utah Constitution apply to parole grant hearings. The *Labrum* court concluded that

"[t]he reality of original release hearings is that they are analogous to sentencing hearings and require due process to the extent that the analogy holds." *Id.* at 908. Importantly, the *Labrum* court also noted,

We emphasize once again that this opinion applies only to original parole release hearings and addresses only those procedures specifically requested by this petitioner. *The extent to which additional due process protections must be afforded inmates in this and other proceedings in the parole system will require case-by-case review. "Due process is flexible and calls for the procedural protections that the given situation demands."*

*Id.* at 911 (emphasis added) (quoting *In re Whitesel,* 111 Wash.2d 621, 763 P.2d 199, 203 (1988)).

Before due process rights in parole proceedings are extended any further, however, parties must demonstrate how the claimed procedural protection would have "substantially further[ed] the accuracy and reliability of the ... fact-finding process." *Neel,* 886 P.2d at 1103; *accord Monson,* 928 P.2d at 1030–31. We believe it appropriate to apply a similar approach to probation revocation proceedings. Thus, a rigid constitutional rule requiring that probationers in every case receive copies of any violation reports a specified time prior to the order to show cause hearing is inappropriate. Accordingly, we do not consider here in what manner due process might require that a probationer be allowed to review a violation report beyond the circumstances at issue.

In this case, Byington freely admitted to the trial court that he had violated his probation by taking illegal drugs and by failing to complete the Fremont treatment program. It is clear from the record that the trial court based its decision to revoke Byington's probation on these unequivocal admissions and that the violation report was incidental. Moreover, Byington was allowed to review the report in question and could have addressed any gross inaccuracies at that time.[4]

---

4. We note that Byington does not claim on appeal that the report contained any significant errors. Moreover, the alleged inaccuracies By-

ington raised before the trial court were irrelevant to the situation presented to the trial court at the hearing.

Under these specific circumstances, due process does not mandate that the violation report should have been sent to Byington before the hearing or that he must have been given additional time to review the report at the hearing. Thus, Byington's due process claim fails.

## CONCLUSION

The record establishes that Byington fairly understood the nature of the probation revocation hearing and that counsel would be appointed for him if he chose. These basic understandings are enough to render Byington's waiver of his statutory right to counsel sufficient under the circumstances. Further, Byington has not demonstrated how his hearing was fundamentally unfair based on the fact that the violation report was not provided to him beforehand. We therefore affirm the trial court's revocation of Byington's probation.

JACKSON and ORME, JJ., concur.