29 P.3d 31 (2001)
2001 UT App 202
STATE of Utah, in the interest of A.E., D.E., C.E., and S.E., persons under eighteen years of age.
M.E., Appellant,
v.
State of Utah, Appellee.
No. 20000325-CA
Court of Appeals of Utah.
June 28, 2001.
Rehearing Denied August 9, 2001.
*32 M.E., Ogden, Appellant Pro Se.
Mark L. Shurtleff, Attorney General, and Carol L.C. Verdoia, Attorney General's Office, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before JACKSON, Associate P.J., and BENCH and BILLINGS, JJ.

OPINION
BENCH, Judge:
¶ 1 Appellant M.E. appeals the termination of his parental rights. Appellant challenges the juvenile court's determination that he waived his right to counsel. Appellant also claims his right to due process was violated when the first two days of the trial were conducted in his absence. Finally, Appellant argues the juvenile court erred when it denied his motion for summary judgment and his motion for contempt. We affirm.

BACKGROUND
¶ 2 Appellant M.E. (Father) and A.E. (Mother) are the natural parents of four children, A.E., D.E., C.E., and S.E. The family came to the attention of the Division of Child and Family Services (DCFS) in 1998 when Father physically assaulted Mother, causing the premature birth of C.E. After an incident at the hospital where Father caused a disturbance, DCFS removed the parties' three children, A.E., D.E., and C.E.
¶ 3 During the next two years, DCFS issued three service plans. Father did not substantially comply with any of them. He failed to undergo a psychological evaluation, domestic violence counseling, random urinalysis testing, and drug treatment. He also neglected to maintain stable housing and employment. Additionally, Father and Mother continued to have contact, contrary to the requirements of the service plans. As a result, the fourth child, S.E., was born in 1999. S.E. was removed after Mother and Father were arrested for retail theft.
¶ 4 In October 1999, Father was personally served with a copy of the State's Petition to Terminate Parental Rights, which identified the dates of the trial on the petition as January 24-26, 2000. In November 1999, Father's court-appointed attorney moved for withdrawal, stating that he had not had contact with his client since August. The attorney also said he had mailed a letter to Father in October, indicating that he would be seeking withdrawal if Father did not contact him. The State opposed the motion to withdraw, alleging it would jeopardize the trial date, and informed Father's attorney that Father *33 was incarcerated at the Weber County Jail. Father's counsel attempted to contact Father at the jail and was told that Father had not returned after a funeral furlough and was a fugitive. The juvenile court subsequently granted counsel's motion to withdraw.
¶ 5 Shortly before the trial date, Father was apprehended and again incarcerated in the Weber County Jail. Trial on the Petition commenced as scheduled on January 24, 2000. Father, however, was not transported from the jail for the trial because he did not inform jail officials of the trial dates. The juvenile court discovered Father's whereabouts on the second day of the trial, after Mother was arrested for having harbored Father, and ordered Father transported from the jail. Father did not appear for the second day of the trial as he could not be safely transported because of behavioral problems.
¶ 6 Father was transported and appeared on the third day of the trial. When Father asked about his attorney, the juvenile court told him the attorney had been allowed to withdraw after the juvenile court determined that Father had waived his right to counsel. The State recalled their chief witness and Father was allowed to cross-examine her and to testify himself. At the conclusion of the trial, the juvenile court took the matter under advisement and later issued a decision terminating both Father's and Mother's parental rights. As grounds for the termination, the juvenile court listed the following: neglect, unfitness, out-of-home placement, failure of parental adjustment, token efforts, and best interests.

ISSUES AND STANDARDS OF REVIEW
¶ 7 We review waiver of a statutory right to counsel for correctness, "but grant the trial court a reasonable measure of discretion when applying the law to the facts." State v. Byington, 936 P.2d 1112, 1115 (Utah Ct.App.1997). "Constitutional issues, including that of due process, are questions of law which we review for correctness." In re K.M., 965 P.2d 576, 578 (Utah Ct.App.1998).

ANALYSIS

I. Waiver of Counsel
¶ 8 Father's first challenge on appeal is to the juvenile court's ruling that he waived his right to counsel. The State contends that Father did not preserve this issue for appeal. However, the record reflects that upon appearing for the third day of the trial, Father asked the juvenile court, "Your honor, do I get an attorney?" The juvenile court then had a somewhat lengthy discussion with Father about Father's failure to communicate with his attorney and the attorney's subsequent withdrawal. At the end of this discussion, the juvenile court said, "Waiver still stands. You waive that right to counsel. I'm proceeding. I will give you the opportunity to question any of these witnesses on [sic] yourself, so if you've got a question, you ask." Although this exchange was not formally presented as an objection and a ruling, it is clear that the juvenile court understood that Father desired an attorney to represent him, and upheld its previous ruling that Father had waived his right to counsel.
¶ 9 Father argues that his right to counsel comes from the Due Process Clause of the Fourteenth Amendment. However, the United States Supreme Court has determined that it could not "say that the Constitution requires the appointment of counsel in every parental termination proceeding." Lassiter v. Dep't of Soc. Serv., 452 U.S. 18, 31, 101 S.Ct. 2153, 2162, 68 L.Ed.2d 640 (1981). The Court reasoned that it is the individual's "interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments['] right to counsel in criminal cases, which triggers the right to appointed counsel." Id. at 25, 101 S.Ct. at 2158. The Court concluded that states should individually determine whether to appoint counsel in termination proceedings. See id. at 34, 101 S.Ct. at 2163.
¶ 10 The Utah Legislature has created a statutory right to counsel in termination proceedings in Utah Code Ann. § 78-3a-913(1)(a) (Supp.2000), which provides, in part:
The parents, guardian, custodian, and the minor, if competent, shall be informed that *34 they have the right to be represented by counsel at every stage of the proceedings. They have the right to employ counsel of their own choice and if any of them requests an attorney and is found by the court to be indigent, counsel shall be appointed by the court as provided in Subsection (3). The court may appoint counsel without a request if it considers representation by counsel necessary to protect the interest of the minor or of other parties.
The issue before us, therefore, is whether the juvenile court properly determined that Father waived this statutory right to counsel.
¶ 11 In the criminal context, the waiver of counsel must be shown to have been made knowingly, intelligently, and voluntarily. See State v. Frampton, 737 P.2d 183, 187 (Utah 1987). The preferred method of ascertaining waiver of the right to counsel in criminal proceedings is a colloquy on the record between the trial court and the defendant. See Wagstaff v. Barnes, 802 P.2d 774, 778 (Utah Ct.App.1990). Absent this colloquy, a valid waiver may be demonstrated if the record reflects "penetrating questioning by the trial court," Frampton, 737 P.2d at 187, to determine that defendant is aware of "`the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" Barnes, 802 P.2d at 778-79 (quoting Van Moltke v. Gillies, 332 U.S. 708, 723-24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)).
¶ 12 We have previously declined to require application of "the strict Frampton standards for safeguarding the constitutional right to counsel" to cases involving a statutory right to counsel. State v. Byington, 936 P.2d 1112, 1116 (Utah Ct.App.1997). In Byington, the defendant argued that his waiver of counsel at his probation revocation hearing was improper because he was entitled to, and did not receive, the same admonitions against self-representation the courts are required to provide defendants in criminal cases. See id. at 1115. We held that since a probationer's right to counsel at a revocation hearing is statutorily based, the standards established for the criminal context do not apply. See id. at 1116. Therefore, we reasoned that "waiver of a statutory right to counsel is proper as long as the record as a whole reflects the probationer's reasonable understanding of the proceedings and awareness of the right to counsel." Id. at 1117. We see no reason why this record-as-a-whole standard should not also apply to the statutory right to counsel in section 78-3a-913 for proceedings to terminate parental rights.
¶ 13 We now consider whether the juvenile court abused its discretion in determining that Father waived his statutory right to counsel. Father was not present at the hearing when his counsel was allowed to withdraw. However, when Father appeared on the third day of trial and asked about his attorney, the juvenile court had a discussion on the record as to Father's whereabouts, his efforts to communicate with his attorney, and his knowledge of the proceedings. The juvenile court confirmed that Father knew the trial was approaching, then asked Father why he did not contact his attorney to prepare for the trial. Father responded, "I was not coming. I didn't wanna [sic] hear more [sic] eight hours of misery. Eight hour [sic] of more [sic] how bad a person I was." Additionally, Father explained he did not contact his attorney while he was a fugitive because, "He'd tell me I[sic] have to come in." This discussion on the record, coupled with the fact that Father had been represented by appointed counsel since May 1998, when proceedings were first initiated, support the juvenile court's conclusion that Father had a reasonable understanding of the proceedings and of his right to counsel when he chose not to communicate with his attorney. Therefore, the juvenile court did not abuse its discretion in concluding that Father waived his statutory right to counsel. See id.

II. Presence at Trial
¶ 14 Father next argues the juvenile court violated his right to due process when it conducted the first two days of trial in his absence. Proceedings to terminate parental rights must "comport with the requirements of Due Process." In re M.A.V., 736 P.2d 1031, 1033 n. 2 (Utah Ct.App.1987). However, *35 there is "no absolute statutory or constitutional right to attend the trial." Id. at 1033-34. We have previously concluded that "[p]arents do not have an absolute right, by statute, to attend the [termination of parental rights] hearing, but only to receive proper notice." Id. at 1033. A proof of service in the record indicates that Father was personally served on October 25, 1999 with notice of the trial scheduled on the State's Petition to Terminate Parental Rights.
¶ 15 Although the juvenile court had no duty to ensure Father's presence at trial, it did everything in its power to facilitate Father's participation. When the trial began on January 24, 2000, the juvenile court believed Father was still a fugitive. The juvenile court asked Mother about Father's whereabouts, since she was known to have had contact with him while he was a fugitive, and she claimed not to know where he was. On the second day of trial, the juvenile court discovered Mother had lied and that she knew Father had been apprehended and had been in the Weber County Jail for three days. The juvenile court immediately ordered Father transported for trial. While awaiting transport, Father caused a disturbance at the jail and, for safety reasons, was not transported. On the third day of trial, the juvenile court had Father transported and even recalled the State's chief witness so Father would have the opportunity to cross-examine her.
¶ 16 Father argues that because he was incarcerated and, therefore, not a free agent, the juvenile court had a duty to either assure his presence at trial, or not hold the trial in his absence. However, Father has failed to show us how he exercised "`due diligence'" in attempting to be present for all stages of the trial, but was "`prevented from appearing by circumstances over which he had no control.'" State ex rel. Summers Children, 560 P.2d 331, 332 (Utah 1977) (citation omitted). Father's absence from trial was voluntary, first, by not informing jail personnel he had a trial scheduled on the first day, and second, by causing a problem at the jail such that they could not safely transport him on the second day. Having done everything in its power to facilitate Father's participation, the juvenile court did not violate Father's right to due process by conducting part of the trial in Father's absence.

III. Motions for Summary Judgment and Contempt
¶ 17 Father's final challenge is to the denial of his motion for summary judgment and the accompanying motion for contempt of court. "We refrain from adjudicating issues when the underlying case is moot. A case is deemed moot when the requested judicial relief cannot affect the rights of the litigants." Burkett v. Schwendiman, 773 P.2d 42, 44 (Utah 1989). In his motion for summary judgment, Father requested visitation with his children. Father's parental rights had been terminated by the juvenile court thirteen days before Father filed his motions. Therefore, he is not entitled to the relief he requested and the issue is moot. Furthermore, since the issue is not one that "is of wide concern, affects the public interest, is likely to recur in a similar manner, and... would likely escape judicial review," it does not warrant treatment. Strollo v. Strollo, 828 P.2d 532, 533 (Utah Ct.App.1992).

CONCLUSION
¶ 18 We conclude that the juvenile court properly determined that Father waived his statutory right to counsel. Additionally, Father's right to due process was not violated when the juvenile court proceeded with part of the trial in his absence. Finally, the juvenile court properly denied Father's motions for summary judgment and contempt as the issues were moot.
¶ 19 Accordingly, the judgment of the juvenile court is affirmed.
¶ 20 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge and JUDITH M. BILLINGS, Judge.