2002 UT App 149

**STATE of Utah, in the interest of C.C., T.C., D.S., and M.M., persons under eighteen years of age.**

**L.K., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20001053–CA.**

Court of Appeals of Utah.

May 9, 2002.

Justin Gary Jensen, Draper, for Appellant.

Mark L. Shurtleff, Attorney General, and John M. Peterson, Attorney General's Office, Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before Judges BILLINGS, GREENWOOD, and ORME.

## OPINION

ORME, Judge.

¶ 1 Appellant L.K. appeals a juvenile court order permanently terminating her parental rights. She argues that the juvenile court erred in denying her pro se motion for sub-stitution of counsel and in failing to ade-quately explore the reasons behind her dis-satisfaction with her attorney. The State contends that the court adequately inquired into her dissatisfaction, as required by *State v. Pursifell,* 746 P.2d 270 (Utah Ct.App.1987). We conclude the inquiry was insufficient and remand so the oversight can be cured.

## FACTUAL BACKGROUND

¶ 2 The State sought to terminate Appel-lant's parental rights. Due to her status as an indigent, Appellant was provided counsel as required by Utah Code Ann. § 78–3a–913(1)(a) (Supp.2001). Prior to trial, Appel-lant asked to address the court. Appellant then expressed a number of complaints to the court. For instance, she explained that she feared possible judicial bias resulting from the trial judge having presided over certain prior hearings.

¶ 3 Appellant also expressed dissatisfaction with the representation provided to her by her court-appointed attorney. She contend-ed that her counsel failed to file an appeal she had requested and neglected to provide her with any understanding of "who ... or what [she] was trying to defend [herself] against." She further explained that she was not supplied with subpoenas for her wit-nesses until the Friday before trial and that, as a result, she was forced to try to "track down people" and deliver them over the weekend. Appellant concluded by making the court aware of her belief that, despite the seriousness of the potential consequences that confronted her, she was not being pro-vided high caliber representation. After hearing Appellant's complaints, her counsel, acknowledging that her concerns focused on his performance, moved to withdraw.[1]

¶ 4 In response, the juvenile court asked Appellant whether she had met with her lawyer. Appellant answered that she had met with him the Thursday and Friday be-fore trial. The court then briefly addressed Appellant's concerns about the court's neu-trality and reassured her that she had "a

---

1. Appellant's attorney responded to her com-plaints with the following: "Your Honor, I—hearing my client, I'm not going to address her concerns concerning myself, but I believe that she doesn't want me as an attorney and has made that very clear today and because of that, I would ask to withdraw."

competent attorney to represent [her]" and that her attorney "[was] a good attorney that [could] help [her] with [her] case."[2] Without making further inquiry into Appellant's complaints about her attorney, the juvenile court denied the attorney's motion to withdraw and required the parties to proceed with trial. Following trial, the juvenile court issued an order permanently terminating Appellant's parental rights.

## ISSUE PRESERVATION

■ ¶ 5 The State initially questions whether Appellant's complaints should be construed as a request for the appointment of substitute counsel. The State argues that, due to the lack of specificity in Appellant's complaints to the juvenile court, she failed to effectively preserve this argument for appeal. Viewed in isolation, the complaints made by Appellant are admittedly somewhat ambiguous and could perhaps be construed as a request for a continuance or a suggestion for recusal rather than a request for substitution of counsel. Clearly, however, those in attendance viewed the complaints, in context, as tantamount to requesting appointment of a different attorney. Thus, on the heels of her complaint, Appellant's attorney sought to withdraw. The juvenile court addressed the situation by reassuring Appellant that she was represented by good counsel and informing her that her counsel would do a good job for her and would continue to represent her. Therefore, we conclude Appellant's comments were clearly understood to include a request for new counsel and that the issue was preserved for appeal. Indeed, it is the only issue raised on appeal.

## JUVENILE COURT'S DUTY TO INQUIRE

■ ¶ 6 In *State v. Pursifell*, 746 P.2d 270 (Utah Ct.App.1987), this court addressed whether Due Process and the Sixth Amendment impose a duty on trial courts to inquire into an indigent criminal defendant's expressed dissatisfaction with his or her court-

appointed counsel. In that case, we reached the following conclusion:

> While an indigent defendant has a right to have counsel appointed to represent him, he does not have a constitutional right to a lawyer other than the one appointed, absent good cause. Whether to appoint a different lawyer for an indigent defendant who expresses dissatisfaction with his court-appointed counsel, but who has no constitutional right to appointment of a different attorney, is a matter committed to the sound discretion of the trial court and will be reversed only for an abuse of discretion.
>
> . . . .
>
> . . . .
>
> However, when dissatisfaction is expressed, the court must make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution . . . .

*Id.* at 272–73 (citations omitted).

■ ¶ 7 We must now determine whether the same standard applies in termination of parental rights proceedings in juvenile court. In making this determination, we recognize that this court has declined the invitation to extend to parents in juvenile court termination proceedings the full panoply of rights and safeguards provided defendants in criminal trials. *See, e.g., In re A.E.*, 2001 UT App 202, ¶¶ 11–12, 29 P.3d 31 (explaining that less strict method of ensuring validity of waiver of statutory right to counsel applies in juvenile court termination proceedings). However, we have left no doubt that indigent parents facing the permanent deprivation of their parental rights are entitled not only to an appointed attorney, but to the *effective* assistance of counsel. *See In re E.H.*, 880 P.2d 11, 13 (Utah Ct.App.) (adopting the same test used in criminal cases to decide a claim of ineffective assistance in a juvenile

---

2. As we have previously noted, "[a] good overall reputation ... is no guaranty even an excellent attorney, especially a very busy one, has not botched a particular case." *State v. Pursifell*, 746 P.2d 270, 273 n. 1 (Utah Ct.App.1987).

court proceeding), *cert. denied*, 890 P.2d 1034 (Utah 1994).

¶ 8 Utah, like many other states, has elected to provide statutorily for the appointment of counsel in termination cases.[3] *See* Utah Code Ann. § 78–3a–913(1)(a) (Supp.2001); *In re A.E.*, 2001 UT App 202 at ¶ 10, 29 P.3d 31; *In re E.H.*, 880 P.2d at 13. The Utah statute mandates that, in juvenile court proceedings,

[t]he parents, guardian, custodian, and the minor, if competent, shall be informed that they have the right to be represented by counsel at every stage of the proceedings.... [I]f any of them requests an attorney and is found by the court to be indigent, counsel shall be appointed by the court.

Utah Code Ann. § 78–3a–913(1)(a) (Supp. 2001).

¶ 9 We have interpreted section 78–3a–913(1)(a) as requiring that the counsel appointed to represent parents must provide effective assistance, because construing the statute any other way would render it "meaningless or illusory." *In re E.H.*, 880 P.2d at 13.[4] An integral part of the right to the effective assistance of counsel is the opportunity to have substitute counsel appointed when necessary and, to that end, to have the court explore a party's complaints regarding the assistance his or her attorney has provided to determine if substitute counsel is indeed necessary. As we explained in *Pursifell*, exploring the validity of these complaints is necessary because when an indigent party "is forced to stand trial 'with the assistance of an attorney with whom he has become embroiled in an irreconcilable conflict,' he is deprived of the 'effective assistance of any counsel whatsoever' and his ... right to counsel is violated." 746 P.2d at 274 (quoting *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir.1970)). In failing to fully investigate a parent's expressed discontent, a court risks denying that parent his or her right to adequate representation. Our concern over the possible denial of this right is not somehow alleviated when the origin of the right is statutory rather than constitutional.

¶ 10 Accordingly, we hold that for the statutorily-provided right to counsel in termination proceedings to be meaningful, juvenile courts, like their district court counterparts in criminal cases, must explore whether there is any validity to an indigent parent's expressed complaints and determine whether the parent's "relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her ... right to counsel would be violated but for substitution." *Id.* at 273. This must be done "[e]ven when the [juvenile court] judge suspects that the [party]'s requests are disingenuous and designed solely to manipulate the judicial process and delay the trial."[5] *Id.*

## FAILURE TO INQUIRE

¶ 11 We must now determine whether the juvenile court in this case failed to satisfy its duty to inquire. While the juvenile court did make some effort to discern whether Appellant had the opportunity to meet with counsel, this was not enough to discharge its obligations under *Pursifell*. *See id.*

¶ 12 Even when presented with the fact that appointed counsel found it necessary to ask to withdraw, the court did not adequately inquire regarding the adequacy of counsel's representation and the state of the attorney-client relationship between counsel and Appellant. *See id.* Having neglected to do so, there simply was no way the juvenile court could determine whether substitution

3. In *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the United States Supreme Court acknowledged that in some cases Due Process will require that parents be provided counsel in termination cases, regardless of whether the jurisdiction has provided for the appointment of counsel statutorily. *See id.* at 31–32, 101 S.Ct. at 2162.

4. At the time of our decision in *In re E.H.*, the principle now embodied in Utah Code Ann. § 78–3a–913 was codified as Utah Code Ann. § 78–3a–35(2)(a) (1992).

5. Of course, the judge's suspicion may be entirely well-founded. When it is, the required inquiry should readily establish the facts substantiating the suspicion and warranting the denial of a change of counsel.

was necessary. Where dissatisfaction with court-appointed counsel has been expressed, juvenile courts must at least inquire into the " 'specific way' in which [the party's] interests [have] not been represented." *Id.*

## REMEDY

¶ 13 "[A] trial court's failure to investigate a ... timely substitution request [made by an indigent party with appointed counsel] is per se error." *State v. Vessey*, 967 P.2d 960, 962 (Utah Ct.App.1998). It is possible to conclude, in appropriate cases, that such an error was harmless. *See, e.g., State v. Valencia*, 2001 UT App 159, ¶ 14, 27 P.3d 573 (holding failure to inquire was harmless where record was "sufficient to support the trial court's determination that good cause did not exist for substitute counsel"). However, the court's failure to sufficiently explore Appellant's complaints in this case leaves us without the information needed to evaluate whether she was entitled to substitute counsel either as a matter of sound discretion or as a matter of law.

¶ 14 Under these circumstances, the only appropriate remedy is to remand so that the juvenile court can "hold an evidentiary hearing to determine if [Appellant's] complaints about [her] appointed counsel justified the appointment of substitute counsel. If so, the trial court should grant [Appellant] a new trial. However, if the court determines [Appellant's] request for substitution of counsel was unfounded, the judgment ... would stand as entered." *Vessey*, 967 P.2d at 964. The court's determination on remand should be governed by the "good cause" standard recognized in prior cases. Good cause exists for providing substitute counsel whenever the court uncovers a " 'conflict of interest, a complete breakdown in communication[,] or an irreconcilable conflict which leads to an apparent unjust verdict.' " *State v. Lovell*, 1999 UT 40, ¶ 31, 984 P.2d 382 (quoting *United States v. Young*, 482 F.2d 993, 995 (5th Cir.1973)), *cert. denied*, 528 U.S. 1083, 120 S.Ct. 806 (2000).

## CONCLUSION

¶ 15 As a parent facing the potential termination of her parental rights, Appellant was entitled to the effective assistance of counsel. In order to ensure that Appellant received such assistance, the juvenile court was obligated to explore her expressed dissatisfaction with the representation she was receiving. Having failed to do so, the juvenile court erred. We now remand for an appropriate hearing so that this oversight can be rectified.

¶ 16 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and PAMELA T. GREENWOOD, Judge.