2014 UT App 82

**STATE of Utah, in the interest of J.F. and D.V.F., persons under eighteen years of age.**

**J.F., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20131150–CA.**

Court of Appeals of Utah.

April 10, 2014.

Rehearing Denied June 18, 2014.

William H. Leigh and Matthew D. Carling, for Appellant.

Sean D. Reyes and John M. Peterson, Salt Lake City, for Appellee, Martha Pierce, Guardian ad Litem.

Before Judges JAMES Z. DAVIS, J. FREDERIC VOROS JR., and JOHN A. PEARCE.

Decision

PER CURIAM:

¶1 In this consolidated appeal, J.F. (Father) appeals both an adjudication order and an order terminating his parental rights to J.F. and D.V.F. We affirm.

¶2 "[I]n order to overturn the juvenile court's decision, the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made." *In re B.R.*, 2007 UT 82, ¶12, 171 P.3d 435 (citation and internal quotation marks omitted). We "review the juvenile court's factual findings based upon the clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶11, 21 P.3d 680. A finding of fact is clearly erroneous when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. *Id.* Therefore, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶12, 171 P.3d 435.

¶3 Father claims the juvenile court erred "by faulting [Father] for failure to protect the fetus from the mother's fetal exposure abuse." Father's challenges relate to three different stages of the child welfare proceeding—adjudication, disposition, and termination—without making any distinction between them. The challenged finding in the adjudication and disposition order stated that Father "knew or should have known of the mother's substance use while pregnant and caring for their 18 month old daughter and he failed to protect the child from this abuse." Father does not challenge the remaining detailed findings supporting the adjudication of the children as abused or neglected. Those findings referred to a history of substance abuse, Father's significant drug addiction for over twelve years, instability of housing in homeless shelters and inexpensive motels, the unsuitable condition of the motel room where the family resided, and—based upon Father's own testimony—his criminal history and past termination of parental rights to at least one child. The court also found that the lack of meaningful prenatal care was "equally attributable" to Father and was "in and of itself abuse and neglect," making additional findings on the adverse effects of the lack of prenatal care. Finally, the juvenile court found that D.V.F. was hospitalized for ten days while exhibiting significant symptoms of drug withdrawal. The court found that Father failed to either drug test or visit the children consistently after removal. Father had the ability to earn money, but he did not do so. Failure to protect the children from their mother's abuse was one of many factors supporting an abuse and neglect adjudication that brought the children within the juvenile court's jurisdiction. Even if Father could successfully challenge the failure-to-protect finding, the adjudication order is amply supported by the remaining unchallenged findings.

¶ 4 At the disposition hearing held immediately after the adjudication, Father did not seek reunification services, volunteering that he would not seek reunification and would be willing to relinquish his parental rights in favor of the mother's obtaining reunification services. Therefore, Father has not preserved any issue regarding the juvenile court's decision not to grant him reunification services. Father also does not challenge the detailed findings addressing the juvenile court's weighing of the factors relevant to a determination that reunification with the parents would not be a dispositional goal.

¶ 5 Father next challenges the failure-to-protect finding as a basis for the termination of his parental rights. The juvenile court determined that there were several grounds supporting the termination of Father's parental rights. Pursuant to Utah Code section 78A–6–507, the finding of a single enumerated ground will support the termination of parental rights. Utah Code Ann. § 78A–6–507 (LexisNexis 2012). Therefore, if sufficient evidence supports any of the grounds for termination found by the juvenile court, the termination is appropriate. Father challenges only the ground of abuse and neglect as it relates to the failure to protect the children from the effects of their mother's drug use. However, the juvenile court also found that Father was an unfit and incompetent parent based upon his abuse and neglect, his habitual and excessive use of controlled substances, and his repeated and continual failure to provide the children with adequate food, clothing, shelter, or other care. *See id.* § 78A–6–507(1)(c). The juvenile court further found that (1) the children were being cared for in an out-of-home placement under the supervision of the juvenile court and the Division of Child and Family Services, *see id.* § 78A–6–507(1)(d)(i); (2) Father had "substantially neglected, wilfully refused, or has been unable or unwilling to remedy the circumstances that caused them to be in an out-of-home placement," *see id.* § 78A–6–507(1)(d)(ii); and (3) "there is a substantial likelihood that [Father] will not be capable of exercising proper and effective parental care in the near future," *see id.* § 78A–6–507(1)(d)(iii). The juvenile court

also found a failure of parental adjustment because following the adjudication, Father failed to visit, pay support, maintain a stable lifestyle, drug test, or express appropriate interest in his children. *See id.* § 78A–6–507(1)(e). Finally, the juvenile court found that Father had made only token efforts to avoid being an unfit parent. *See id.* § 78A–6–507(1)(f). Because the evidence amply supports the remaining unchallenged grounds for termination, a challenge to the finding on failure to protect the children from their mother's abuse or neglect, even if successful, would not support reversal.

¶ 6 Father claims that the juvenile court improperly admitted child welfare records from other states at the adjudication trial. Following the shelter hearing, the juvenile court ordered the State to obtain any child welfare records involving the parents from other states. Father objected to the admission of the out-of-state records under the business records exception to the hearsay rule because the records compiled some documents generated by other states. The juvenile court admitted the out-of-state child welfare records only for purposes of the disposition hearing and ruled that if the State sought their admission for any other purpose, it would be required to provide appropriate foundation. The State did not seek admission for adjudication purposes, and Father made no further objection. The admission of the out-of-state records for purposes of setting the dispositional goal for the children was not error. *See* Utah R. Juv. P. 46(a) ("The court may receive any evidence that is relevant to the disposition of the case including reliable hearsay and opinions."). Furthermore, Father testified about the child welfare proceedings in other states, admitting that his parental rights to one or more of his older children had been terminated. He also testified about his criminal history. Therefore, the adjudication findings about those out-of-state proceedings were based upon Father's own testimony.

¶ 7 Father claims that he was denied an opportunity to challenge the removal warrant. The first and most appropriate opportunity to challenge the removal warrant was

at the shelter hearing, which is intended to determine the legitimacy of removal. The shelter order in this case ruled that the removal was appropriate. Father did not provide a transcript of that hearing for this appeal. Furthermore, Father's claim that he attempted to challenge the removal warrant at the adjudication trial is not supported by the record.

¶ 8 Father contends that the juvenile court erred in denying him a continuance of the termination trial. Father was present at the pretrial and had actual notice of the trial date. Father was incarcerated in Las Vegas on the day of the trial. Although termination of parental rights proceedings must comport with due process, there is "no absolute statutory or constitutional right to attend the trial." *In re A.E.*, 2001 UT App 202, ¶ 14, 29 P.3d 31 (citations and internal quotation marks omitted). A juvenile court has no duty to ensure a parent's presence at the trial, where the parent had adequate notice of the trial date. *Id.* ¶ 15. Here, Father was incarcerated for upwards of ten days before seeking a continuance on the eve of trial although he had actual notice of the trial date. *See In re Z.Z.*, 2013 UT App 215, ¶ 22, 310 P.3d 772 (stating that parents "failed to show they exercised any semblance of due diligence in attempting to be present for the termination trial in Utah or at least to seek a continuance in a timely manner"). Because Father had adequate notice, did not demonstrate any diligent efforts to be present, and failed to timely seek a continuance, the continuance was denied without offending due process.

¶ 9 Father claims that the juvenile court plainly erred "in determining that the adoption of the children was plausible when an insufficient amount of time had passed for a bond to be established between the foster parents and the children, and thus it was not shown that adoption was in the children's best interests." The juvenile court found that it was in the best interests of the children to be placed in the custody of the Division of Child and Family Services for adoption. The juvenile court also found within its order that it had assessed the factors in Utah Code section 78A–6–510(1),

(2), and (3) and found that they weighed in favor of the foster parents. Father claims that the short time that the children had been in a prospective adoptive placement precluded the court from making any finding that adoption would be in the children's best interests. The termination trial was on November 1, 2013. In the first week of October, a family agreed to adopt the children if they became available. The family had previously provided respite care for the children. Father's assertion that the best interests finding was based solely upon the prospective adoptive parents' willingness to adopt is incorrect. The record reflects that the caseworker testified about visiting the children in the prospective adoptive home, the children's progress there, and the suitability of the home and the prospective adoptive parents. We previously concluded that while the lack of a prospective adoptive placement weighed against termination of parental rights, "the juvenile court correctly concluded that it was not controlling with regard to the children's best interests." *In re J.D.*, 2011 UT App 184, ¶ 23, 257 P.3d 1062. Father has not demonstrated that the juvenile court erred in concluding that it was in the Children's best interests to terminate parental rights and allow them to be adopted into a stable home where their needs were being met.

¶ 10 Father contends that application of rule 58 of the Utah Rules of Appellate Procedure—allowing an appellate court to issue a decision based upon a petition on appeal—unconstitutionally denies the right to a meaningful appeal. The Utah Supreme Court rejected this constitutional challenge in *In re B.A.P.*, 2006 UT 68, 148 P.3d 934. The appellants in *B.A.P.* argued that "the expedited procedures outlined in the appellate rules, and applied by the court of appeals, denied them their constitutional right to a meaningful appeal by precluding full presentation of legal argument to the appellate court." *Id.* ¶ 1. Under the rules, "an appellant files a petition on appeal, which is substantially equivalent to a docketing statement." *Id.* ¶ 9. The supreme court rejected a claim that the rules prevented adequate presentation of argument, noting that because rule 58 allows an appellate court to

render a decision based upon the petition on appeal without full briefing, "counsel would be remiss to omit arguments from that petition, albeit argument in specific, exact, and concise form." *Id.* ¶ 12. The supreme court determined that the page limitation was not too restrictive to allow meaningful presentation. *Id.* ¶ 13. The supreme court rejected "the notion that deciding a case on its merits without an unfettered presentation of legal argument is equivalent to refusing to fully hear the case," concluding that "an appellate court may properly render a decision in the absence of full presentation of arguments without offending the appellant's constitutional right to a meaningful appeal." *Id.* ¶ 16. The supreme court held that "as a constitutional matter, and as a matter of rule interpretation, these rules do nothing to preclude either a presentation of appropriate legal arguments or a meaningful appeal," *id.* ¶ 19, nor do the rules preclude an appellant "from presenting cogent, concise legal argument to an appellate court," *id.* ¶ 20.

▓ ¶ 11 The constitutionality of the appellate rules pertaining to child welfare appeals was resolved by the Utah Supreme Court in *B.A.P.* Accordingly, "an appellate court may constitutionally render a decision on the merits with only a presentation of the issues along with an appellate court's independent examination of the record." *In re K.K.*, 2013 UT App 126, ¶ 5, 302 P.3d 495 (per curiam)(mem.). Nevertheless, Father argues that language from our unpublished decision of *In re N.N.*, 2010 UT App 79U, 2010 WL 1394381 (per curiam), is inconsistent with *B.A.P.* and demonstrates that this court applies the appellate rules in a manner that denies parties a meaningful right to appeal. In *N.N.*, we "remind[ed] all counsel appearing in child welfare proceedings of their responsibilities to file petitions on appeal, and responses to those petitions, that comply with the requirements of rules 55(d) and 56(b) of the Utah Rules of Appellate Procedure."[1] *Id.* para. 2. Accordingly, we explained,

> While the court is mindful of the restrictions placed upon litigants due to the expedited appellate process in child welfare proceedings, petitions on appeal and responses to those petitions must be designed to zealously advocate the positions of the parties and to assist the court in resolving the matter. In so doing, the parties should provide the court with an adequate statement of facts that will allow the court to understand the nature and history of the case. Further, the parties should attempt to apply legal authority to the particular facts of the case. *See In re B.A.P.*, 2006 UT 68, ¶ 12, 148 P.3d 934 (discussing the obligation to include an argument section in a petition on appeal). Legal citations unaccompanied by an application to the particular facts and issues involved in the case are rarely helpful. Ultimately, counsel should consider petitions on appeal and responses thereto to be more like briefs than docketing statements.

*Id.*

¶ 12 Father contrasts the statement in *B.A.P.* that the petition on appeal is the equivalent of a docketing statement, *see B.A.P.*, 2006 UT 68, ¶ 9, 148 P.3d 934, with the statement in *N.N.* that a petition on appeal is more like a brief than a docketing statement, *see N.N.*, 2010 UT App 79U, para. 2, 2010 WL 1394381, to support his argument that we apply the rules in a manner that denies the right to a meaningful appeal. However, consistent with the interpretation of the appellate rules in *B.A.P.*, the explanatory dicta in *N.N.* merely underscored the hybrid nature of petitions on appeal and responses to them, reminding parties of their obligations to provide documents that are in compliance with appellate rules and that will assist the court in reaching its decision. We also note that we granted Father's request

---

1. Rule 55(d) explains the required contents of a petition on appeal. For example, rule 55(d)(4) requires "a concise statement of the material adjudicated facts as they related to the issues presented in a petition on appeal." Rule 55(d)(5) requires "a statement of the legal issues presented for appeal, how they were preserved, ... and the applicable standard of review." Finally, rule 55(d)(6) requires a petition to include "statutes, case law, and other legal authority for each issue raised." Rule 56(b) states the analogous requirements for a response to the petition on appeal.

for an extension to the page limitation for petition on appeal.

¶ 13 Because "a foundation for the court's decision exists in the evidence," we affirm the juvenile court's adjudication and disposition order and the order terminating Father's parental rights. *See In re B.R.,* 2007 UT 82, ¶ 12, 171 P.3d 435.