*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 15**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH, in the interest of J.B., a person under eighteen years of age.

J.M.B.,
*Appellant,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20151083
Filed April 24, 2018

On Direct Appeal

Second District Juvenile Court, Farmington
The Honorable J. Mark Andrus
No. 1091623

Attorneys:

Scott L. Wiggins, Salt Lake City, for appellant

Sean D. Reyes, Att'y Gen., Carol L. C. Verdoia, John M. Peterson, Asst. Att'ys Gen., Salt Lake City, for appellee

Martha Pierce, Salt Lake City, for Office of Guardian ad Litem

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE, and JUDGE TOOMEY joined.

Due to her retirement, JUSTICE DURHAM did not participate herein; COURT OF APPEALS JUDGE KATE A. TOOMEY sat.

JUSTICE PETERSEN became a member of the Court on November 17, 2017, after oral argument in this matter and accordingly did not participate.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1        J.B. is the biological child of J.J. When J.J. gave birth to J.B. in 2010, she was involved in a relationship with J.M.B. Later, when J.J. and J.M.B. split up, J.M.B. became J.B.'s legal guardian. J.M.B. was also given custody of the child. J.M.B.'s guardianship and custody were subsequently terminated after a third party called the police to report child neglect.

¶2        At that time J.B. was placed into the custody of the Division of Child and Family Services (Division). And the State petitioned the juvenile court to award custody and guardianship of J.B. to the Division. During the custody and guardianship trial, J.M.B., who was representing herself, chose to remove herself from the trial proceedings. The trial continued in her absence. The juvenile court then determined that J.M.B.'s guardianship rights should be terminated. It also found that reunification services between J.M.B. and J.B. would not be appropriate. J.M.B. filed this appeal.

¶3        During oral arguments on appeal, the Guardian ad Litem renewed a motion to dismiss for lack of jurisdiction. The Guardian ad Litem asserted that this appeal is moot because J.B.'s adoption had been finalized for more than one year and a governing statute bars any person from contesting the adoption after one year from the date of a finalized adoption. *See* UTAH CODE § 78B-6-133(7)(b).

¶4        We deny the motion to dismiss and reach the merits of J.M.B.'s appeal. We conclude that the case is not moot because J.M.B.'s action and appeal satisfy the time constraints set forth in Utah Code section 78B-6-133(7)(d). And we affirm the juvenile court's order terminating J.M.B.'s guardianship and custody. In so doing we reject the principal arguments raised by J.M.B. on this appeal.

¶5        First we conclude that the juvenile court had jurisdiction to vacate the district court's orders yielding guardianship rights to J.M.B. We explain that juvenile courts have statutory authority to modify a district court's order if the child also falls within the juvenile court's jurisdiction. *See* UTAH CODE § 78A-6-104(4)(a). Second we hold that J.M.B. waived her statutory right to counsel. This determination is based on evidence in the record reflecting that J.M.B. reasonably understood the proceedings and was aware of her right to counsel but nonetheless took actions in a clear effort to proceed pro se. Third we decline to reach a final series of arguments

raised by J.M.B. because she failed to preserve these matters in the juvenile court proceedings below.

I

¶6    J.B. was born to J.J. in 2010 while she was in a relationship with J.M.B. When that relationship ended J.M.B. petitioned the district court for custody of J.B. The district court awarded joint physical and legal custody to both J.J. and J.M.B. In so doing the court suggested, among other things, that J.M.B. was "entitled to parenting rights in [J.B.]."[1] J.M.B. was also ordered to pay child support.

¶7    The custody arrangement was changed a few months later when J.M.B. sought to take J.B. with her on a move to Colorado. At that point the district court awarded J.M.B. sole physical custody but retained the joint legal custody arrangement. And under this arrangement J.J. was ordered to pay child support to J.M.B.

¶8    In October 2015, J.M.B. and J.B. traveled from Colorado to Utah. They stopped at a McDonald's in Davis County. While in the McDonald's playroom, J.B. approached a third party, A.H., asking for food. A.H. noticed that the child was wearing a visibly soiled diaper and dirty clothes. A.H. walked J.B. out of the McDonald's playroom to order her food.

¶9    J.M.B. never approached A.H. or J.B. during the time that A.H. spoke with J.B., bought her food, and watched her eat. After some time went by, A.H. confronted J.M.B. At that point J.M.B. walked J.B. out to the truck to change her diaper and clothing. A.H. then assumed that J.M.B. was leaving with the child and called the police to report what he perceived to be a case of neglect.

¶10    When the police arrived, one officer separated J.B. from the rest of the scene and took her to the bathroom. J.M.B. refused to cooperate with the police. She made statements about giving up on the child. And she refused to provide any names of relatives with whom J.B. could be placed. Eventually the police arrested J.M.B. on an outstanding warrant, and J.B. was placed into the temporary custody of the Division.

---

[1] The basis for this suggestion is unclear. J.M.B. is not a biological parent of J.B.

¶11    A series of juvenile court hearings ensued, including shelter and child welfare hearings. J.M.B. retained counsel for some of those hearings but eventually terminated her counsel and proceeded pro se.

¶12    J.M.B. was represented by attorney Jordan Putnam at the child welfare hearing. At some point Putnam sought to withdraw as counsel. J.M.B. initially opposed Putnam's request, asserting that "allow[ing] him to withdraw would delay the case." But when Putnam detailed J.M.B.'s outbursts and lack of cooperation with counsel, J.M.B. conceded that the attorney-client relationship was irreparable. The juvenile court then granted Putnam's request to withdraw as counsel. It also raised concerns about J.M.B.'s ability to retain counsel and to prepare for trial in the limited time available.

¶13    J.M.B. insisted that she wished to proceed. She asserted that she did not have plans to get an attorney and contended that she could be prepared in time for trial. The court asked J.M.B. at least two more times whether she intended to proceed to trial without an attorney. Each time J.M.B. was firm in her desire to proceed pro se and identified motions she intended to file. And each time she insisted that she wanted to keep the previously scheduled trial dates. J.M.B. then proceeded to represent herself for the remainder of the child welfare hearing and the trial.

¶14    The key question at trial was whether J.M.B. had physically neglected J.B. In her opening statement J.M.B. asked the court to recognize her as J.B.'s parent (and not just a guardian). In so doing she cited the district court's order referring to her as a parent. She also alluded to broad, evolving notions of parenthood. But she cited no legal grounds for her purported status as a parent. Indeed her participation at trial did not extend much further than the opening statements.

¶15    At an early stage in the proceedings J.M.B. insisted that she could not get a fair trial and left the courtroom. At that point she told the court that it "may try the rest of th[e] trial in [her] absence." The juvenile court asked J.M.B. three times if she intended not to participate in the trial. She repeatedly told the court that she had no obligation to J.B. and expressly stated that she was choosing to leave mid-trial.

¶16    After J.M.B. left the trial, the Guardian ad Litem asked the court to make an inference that J.M.B. no longer had an interest in J.B. and should no longer have standing in the case. The juvenile court found "the cumulative effect of the statements [and] of having

4

left the court twice" sufficient to imply that J.M.B. no longer had an interest in pursuing custody. The State then proceeded by proffer. J.M.B. subsequently reappeared in an attempt to interrupt the trial several times, but the court refused to hear J.M.B. and allowed the State to continue with the proffer.

¶17 The juvenile court found that J.M.B. had neglected J.B. It also determined that reunification efforts would not be in the best interest of the child. J.M.B. filed this appeal.

II

¶18 Before addressing J.M.B.'s arguments on the merits we first consider the Guardian ad Litem's challenge to our jurisdiction. The Guardian ad Litem contends that J.M.B.'s appeal is moot in light of Utah Code section 78B-6-133(7)(b). That provision "imposes limitations on the right to contest adoptions." *In re Adoption of T.B.*, 2010 UT 42, ¶ 19, 232 P.3d 1026. It states that "[n]o person may contest an adoption after one year from the day on which the final decree of adoption is entered." UTAH CODE § 78B-6-133(7)(b).

¶19 The Guardian ad Litem claims that J.M.B.'s appeal is foreclosed by this provision. Because J.B.'s adoption was finalized on September 22, 2016, and J.M.B. did not move to stay the adoption proceedings until September 29, 2017, the Guardian ad Litem insists that J.M.B. is statutorily barred from challenging the adoption on this appeal. And the Guardian ad Litem contends that this appeal is accordingly moot.

¶20 We disagree. The cited statute includes an exception to the general rule. It states that "[t]he limitations on contesting an adoption action, described in this Subsection (7), do not prohibit a timely appeal of: (i) a final decree of adoption; or (ii) a decision in an action challenging an adoption, if the action was brought within the time limitations described in Subsections (7)(a) and (b)." *Id.* § 78B-6-133(7)(d). And J.M.B.'s appeal in this case was timely under this provision.

¶21 The juvenile court proceeding that J.M.B. challenges on this appeal involved "a decision in an action challenging an adoption" within the meaning of the cited statute. As in *In re Adoption of T.B.*, J.M.B.'s action did not "expressly call[] for the adoption [of J.B.] to be set aside." 2010 UT 42, ¶ 23. But she did advance a position that was "clearly incompatible with the termination of [her] parental rights" in an adoption. *Id.* And for that reason the juvenile court proceeding qualifies as "an action challenging an adoption" under our decision in *In re Adoption of T.B.*

¶22 In the *T.B.* case we noted that section 133(7) expressly "prohibits three groups of persons—parties to the adoption proceeding, persons served with notice of the adoption proceeding, and persons who have executed a consent to the adoption or a relinquishment of parental rights—from contesting adoptions at all (other than by appeal in the adoption proceeding itself)." *Id.* ¶ 19 (citing UTAH CODE § 78B-6-133(7)(a)). But we also observed that "the statute contemplates that a person not within these categories may bring a challenge to an adoption decree" by "mounting a collateral attack"—"so long as the challenge is brought within one year of the entry of the decree of adoption." *Id.* ¶¶ 20, 21. And we held that "a separate action challenging the adoption, on whatever ground, is a proper means of challenging an adoption decree" under subsection 133(7)(d). *Id.* ¶ 21. We accordingly recognized the viability of an appeal from a decision in such an action so long as the underlying action "was brought within the time limitations described in Subsections (7)(a) and (b)." *Id.*; UTAH CODE § 78B-6-133(7)(d).

¶23 The appeal in this case is a timely, proper proceeding under the framework set forth in *T.B.* In the juvenile court proceedings at issue on this appeal J.M.B. mounted a collateral attack on the adoption of J.B. She did so not by "expressly calling for the adoption to be set aside" but by advancing a position that was "clearly incompatible with the termination of [her] parental rights" in an adoption. *In re Adoption of T.B.*, 2010 UT 42, ¶ 23. And because that action was timely (within one year of the entry of the decree of adoption), J.M.B. is entitled to pursue her timely appeal in this proceeding. That defeats the Guardian ad Litem's mootness challenge.

III

¶24 We affirm the juvenile court's decision on the merits. First we conclude that the juvenile court had jurisdiction to vacate the district court's custody orders. Second we find that J.M.B. waived her statutory right to counsel. And last we reject J.M.B.'s attempts to establish parental rights under the *in loco parentis* doctrine and the Custody and Visitation for Persons Other than Parents Act, Utah Code section 30-5a-103, on the ground that these arguments were unpreserved.

A

¶25 J.M.B. first challenges the juvenile court's decision on jurisdictional grounds. She asserts that the juvenile court's concurrent jurisdiction under Utah Code section 78A-6-104(4) does

not vest the juvenile court with the authority "to collaterally attack or completely vacate" the district court orders.

¶26      We disagree. Where, as here,

> a support, custody, or parent-time award has been made by a district court in a divorce action or other proceeding, and the jurisdiction of the district court in the case is continuing, the juvenile court may acquire [concurrent] jurisdiction in a case involving the same child if the child is dependent, abused, [or] neglected.

UTAH CODE § 78A-6-104(4)(a). And the juvenile court's concurrent jurisdiction encompasses the power to alter the district court's dispositions so long as it is necessary to secure the safety and welfare of the child: "The juvenile court may, by order, change the custody, . . . support, parent-time, and visitation rights previously ordered in the district court as necessary to implement the order of the juvenile court for the safety and welfare of the child." *Id.* § 78A-6-104(4)(b).

¶27      This is a case of continuing jurisdiction of the district court and concurrent jurisdiction of the juvenile court. The district court had continuing jurisdiction over the custody proceedings involving J.M.B. and J.J. (J.B.'s mother). And the juvenile court acquired concurrent jurisdiction after the allegations of neglect of J.B. came to light. When J.M.B. was charged with neglect the juvenile court acquired concurrent jurisdiction under Utah Code section 78A-6-104(4). That jurisdiction encompassed the power to "change" the district court's orders as necessary to implement the juvenile court's decision and to preserve "the safety and welfare of the child." *Id.* For that reason the juvenile court had jurisdiction to enter the orders it entered in this case and J.M.B.'s jurisdictional challenge accordingly fails.

B

¶28      J.M.B. next challenges the juvenile court's decision on the ground that she was deprived of a right to counsel. We recognize this right but affirm the juvenile court's conclusion that J.M.B. waived it.

¶29      J.M.B. had a statutory right to counsel as J.M.B.'s guardian. By statute a guardian has a right to "be informed that [she] may be represented by counsel at every stage of the proceedings" in any action initiated by the state in juvenile court. UTAH CODE § 78A-6-1111(1)(a). Yet Utah courts have held that a guardian may waive this right so "long as the record as a whole reflects the

[guardian's] reasonable understanding of the proceedings and awareness of the right to counsel." *State ex rel. A.E.*, 2001 UT App 202, ¶ 12, 29 P.3d 31 (citation omitted). And we conclude that the record supports such a conclusion here.

¶30    J.M.B.'s attorney filed a motion to withdraw as counsel during the child welfare hearing, just a few weeks before the trial proceedings that are currently on appeal. At that point the juvenile court (and all involved parties) offered to move the trial dates in order to allow J.M.B. to look for another attorney. Yet J.M.B. announced that she did not intend to get another attorney, but intended to proceed pro se. The judge asked J.M.B. two more times whether she intended to proceed without an attorney. And J.M.B. confirmed her preference all three times.

¶31    The juvenile court concluded that this amounted to waiver. It found that J.M.B. had been "previously advised of the nature of the proceedings, of her rights under the law, . . . and the right to trial and the right to present evidence in her defense" as well as her "right to be represented by counsel at every stage of the proceedings." From this the court concluded that J.M.B. had "acknowledged her right to representation" but waived that right when she "chose to proceed pro se."

¶32    J.M.B. has not challenged these findings. And we accordingly affirm.

¶33    The record on appeal would have been clearer if the court had expressly reminded J.M.B. of her statutory right to counsel and asked her to confirm her knowing and voluntary waiver on the record. That would have been a "best practice."[2] But the question presented isn't whether the court followed best practices. It is whether the "record as a whole" shows that J.M.B. knew that she had a right to counsel and knowingly waived that right. *Id.* (citation omitted). We hold that the record supports that conclusion. We affirm on the basis of the juvenile court's unchallenged findings.

---

[2] *See State v. Frampton*, 737 P.2d 183, 187 n.12 (Utah 1987) (noting a "best practice" colloquy for making "clear on the record" that waiver is knowing and voluntary in a criminal case).

C

¶34    J.M.B. proceeded to represent herself at trial. But she only participated in a small portion of the trial before announcing that she did not have any obligations to J.B. and left the courtroom. At that time, the juvenile court found that J.M.B. no longer had an interest in asserting a right to custody. And the court proceeded to conclude that J.M.B. had neglected J.B. and that reunification services would not be provided.

¶35    J.M.B. seeks to challenge these determinations on appeal. She asserts that the juvenile court erred in concluding that she was a guardian, and not a parent, for purposes of the adjudication proceedings. She claims, specifically, that she acquired parental rights under the doctrine of *in loco parentis* and under the Custody and Visitation for Persons Other than Parents Act, Utah Code section 30-5a-103. We affirm without reaching these arguments because they were not preserved.

¶36    As a general rule we "will not consider an issue unless it has been preserved for appeal." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (citation omitted). To preserve an issue for appeal an appellant must have "presented [it] to the district court in such a way that the court has an opportunity to rule on [it]." *Id.* (second alteration in original) (citation omitted). We affirm because J.M.B. did not present the *in loco parentis* or statutory grounds for establishing parental rights to the juvenile court and has not established a basis for an exception to the general requirement of preservation.

¶37    In the brief portion of the trial in which J.M.B. participated she asserted a vague notion of a parental right in J.B. But she never identified any "supporting evidence or relevant legal authority" for her position. *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (citation omitted). Certainly she did not refer to the doctrine of *in loco parentis* or cite Utah Code section 30-5a-103.[3] And that foils her

---

[3] Even if the statutory argument were preserved, neither the statute nor the district court's loose language in its order made petitioner a parent. Section 30-5a-103 applies only to a person other than a parent as defined under the Custody and Visitation for Persons Other than Parents Act. The act defines "parent" as "a biological or adoptive parent" and "[p]erson other than a parent" as "a person related to the child by marriage or blood." UTAH CODE

(continued . . .)

attempt to raise these issues on this appeal. The mere mention of "an issue without introducing supporting evidence or relevant legal authority" is not adequate preservation. *Id.* (citation omitted). To preserve an issue a party must give the lower court a meaningful opportunity to rule in its favor. And that requires, at a minimum, the presentation of some supporting evidence or relevant authority. This conclusion holds, moreover, even for a pro se party. *See State v. Winfield*, 2006 UT 4, ¶¶ 19, 28, 128 P.3d 1171 (concluding that pro se status "d[oes] not obviate" a party's duty of preservation).

¶38      J.M.B. seeks to avoid this conclusion on appeal by invoking the doctrine of plain error. But that argument is unavailing. Any alleged error in the application of the doctrine of *in loco parentis* or under Utah Code section 30-5a-103 is by no means obvious. We are not convinced that there was error in the failure to extend these doctrines to J.M.B. Certainly there is no controlling authority supporting J.M.B.'s arguments on appeal. At a minimum, we can say that any alleged error would not have been apparent to the juvenile court. For that reason we decline to reach these unpreserved issues.

––––––––––––––

(continued . . .)

§ 30-5a-102. J.M.B. is not related to J.B. by blood and she was never married to J.B.'s mother. So J.M.B. does not qualify as "parent" or "person" as defined by the act.