**2015 UT App 139**

# THE UTAH COURT OF APPEALS

PAUL KIMBAL,
Appellant,
*v.*
DEPARTMENT OF CORRECTIONS AND
BOARD OF PARDONS AND PAROLE,
Appellees.

Per Curiam Decision
No. 20150205-CA
Filed June 4, 2015

Third District Court, Salt Lake Department
The Honorable Su Chon
No. 140900446

Paul Kimbal, Appellant Pro Se

Sean D. Reyes and Nancy L. Kemp, Attorneys
for Appellees

Before JUDGES GREGORY K. ORME, JAMES Z. DAVIS, and
JOHN A. PEARCE.

PER CURIAM:

¶1    Paul Kimbal appeals the grant of summary judgment denying his petition for extraordinary relief filed under rule 65B of the Utah Rules of Civil Procedure. We affirm.

¶2    Kimbal essentially claims that the Board of Pardons (the Board) abused its discretion by requiring him to "expire" his life sentence and that the Department of Corrections (the Department) violated due process by imposing a severe management override. The severe management override placed him at privilege level 2, which prevented him from completing the Sex Offender Treatment Program (SOTP). Kimbal also complains that he was denied due process in his August 2012

rehearing before the Board because he received copies of some materials provided by the victim or victim's advocate only after they were submitted at the hearing.

¶3     This case presents circumstances similar to those reviewed by this court in *Harris v. Friel*, 2006 UT App 161U (per curiam). Harris, like Kimbal, was unable to participate in SOTP due to his privilege level. Harris claimed that the completion of SOTP was a condition of his sentence and that he therefore had a liberty interest in SOTP. *Id.* para. 3. This court determined that because "Utah's sentencing statutes do not mandate treatment as a condition of parole for sex offenders" and because Harris "still might be considered for early release if he successfully completed treatment," the facts of his case did not give rise to a liberty interest in SOTP that would require a due process analysis. *Id.* para. 4. Similarly, Kimbal may be reclassified as a level 3 offender, become eligible for SOTP and, upon successful completion, seek reconsideration by the Board.[1] Accordingly, the Department did not violate Kimbal's due process rights by keeping him at level 2. Furthermore, the placement and retention of a severe management override was supported by valid considerations that included not only a gun smuggling incident and related federal conviction, but the nature of Kimbal's crime and his disciplinary record in prison.

¶4     Decisions of the Board regarding parole "are final and are not subject to judicial review." Utah Code Ann. § 77-27-5(3) (LexisNexis 2012). Generally, judicial review is limited to only

---

1. Kimbal states in his reply to the summary disposition motion that he was released from maximum security in April 2015 but has been denied admission to SOTP because he is not "flagged" by the Board for treatment. These facts are presented for the first time on appeal, were not before the Board or the district court, and are not considered by this court in reaching this decision.

reviewing "the fairness of the *process* by which the Board undertakes its sentencing function" and does not include a review of the result. *Lancaster v. Board of Pardons*, 869 P.2d 945, 947 (Utah 1994). "[S]o long as the period of incarceration decided upon by the [Board] falls within an inmate's applicable indeterminate range, . . . then that decision, absent unusual circumstances, cannot be arbitrary and capricious." *Preece v. House*, 886 P.2d 508, 512 (Utah 1994). In this case, the Board did not abuse its discretion in determining that Kimbal's term would be the maximum indeterminate sentence.

¶5      Similarly, there is no genuine issue of fact supporting the claim that Kimbal was denied procedural due process in the August 2012 proceedings before the Board. "[T]wo due process requirements must be met in parole grant hearings." *Peterson v. Board of Pardons*, 931 P.2d 147, 150 (Utah Ct. App. 1997). "[A]n inmate must receive adequate notice to prepare for a parole hearing" and "must receive copies or a summary of the information in the Board's file upon which the Board will rely in deciding whether to grant parole." *Id.* The latter requirement "requires that the inmate know what information the Board will be considering at the hearing and that the inmate know soon enough in advance to have a reasonable opportunity to prepare responses and a rebuttal of inaccuracies." *Id.* (internal citations and quotation marks omitted).

¶6      Kimbal received notice of his hearings, copies or summaries of the information in his file, and the rationale for the decisions made. In support of the summary judgment motion, the Board stated that the only information that had not been included in the prehearing packet provided before the August 2012 hearing was information provided by the victim at the hearing, copies of which were provided to Kimbal at the hearing. The materials included (1) written versions of the live statements made by the victim and her sons at the hearing, (2) letters from the victim's friends and family, (3) a supplemental police report

dated August 6, 1994, (4) a letter the victim wrote to the Board in 1997, and (5) a medical report from 1994, discussing the victim's injuries. The Board stated that while the packet provided by the victim contained some new material, the information itself was largely duplicative. Kimbal did not request a continuance or additional time to respond to the victim's material. In addition, Kimbal wrote a letter to the Board's hearing officer after the August 2012 hearing disputing some of the victim's statements regarding the offense, asking that a letter from a county attorney be disregarded, and requesting a more legible copy of the victim's hospital report. The hearing officer acknowledged that Kimbal's letter was received, and it was transmitted to the Board for consideration with other materials.

¶7    "[A]ccuracy and legitimacy are the two critical functions implicated by" the requirement to provide copies or a summary of the information that will be considered by the Board. *Peterson*, 931 P.2d at 151. Thus, "an inmate must be given an opportunity to point out inaccuracies in the materials and information upon which the Board relies." *Id.* Because Kimbal was given the opportunity to correct any errors contained in his file, including the opportunity to respond to the victim's statements at the hearing, and an opportunity to communicate his disagreement to the Board by letter, the procedure the Board followed satisfied due process. *See id*. The district court correctly concluded that Kimbal was not denied procedural due process by the Board.

¶8    Accordingly, we affirm.

––––––––––